## THE CONNECTICUT ASSOCIATION OF BOARDS OF EDUCATION, INC., ET AL. *v.* MARK R. SHEDD, COMMISSIONER OF EDUCATION, ET AL.
### (12455)
### (12473)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

·Argued May 9—decision released October 22, 1985

*Ralph G. Elliot,* for the appellants (named plaintiff et al.).*

*Thomas P. Clifford III,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert W. Garvey,* assistant attorney general, for the appellees (named defendant et al.).

* The plaintiff board of education of the town of West Hartford joined in the briefs of the named plaintiff et al.

*William J. Dolan,* with whom, on the brief, were *Ronald Cordilico* and *Constance Augsburger,* for the appellee (defendant Connecticut Education Association).

*Joel M. Ellis,* with whom, on the brief, was *William S. Zeman,* for the appellees (defendant Connecticut State Council of AFSA Locals et al.).

*George C. Hastings, Timothy S. Hollister* and *Patricia A. Ayars* filed a brief as amici curiae.

SANTANIELLO, J. These consolidated appeals are from a judgment that upheld the constitutionality of Public Acts 1979, No. 79-405, "An Act Concerning Last Best Offer Binding Arbitration For Teacher Contract Disputes," (the act). The original plaintiffs in this action were the town of West Hartford and its duly elected council members; the West Hartford board of education and its duly elected members; Leslie M. Gravlin and Kimberly Cheney, residents, electors and taxpayers of the town of West Hartford; John McGavack, Jr., a resident, elector and taxpayer of the town of Madison; and also the superintendent of schools of the town of Madison, the Manchester board of education and its duly elected members, the Trumbull board of education and its duly elected members, and the Connecticut Association of Boards of Education, Inc. (CABE). Subsequently, the town of Weston and the town of Montville intervened as parties plaintiff. The defendant commissioner of education, Mark R. Shedd, filed a motion to dismiss the action as to all the plaintiffs, alleging that the court lacked subject matter jurisdiction over the matter because the plaintiffs had failed to allege facts establishing that they had standing to seek an adjudication of the issues raised. The court, *Flanagan, J.,* denied the motion to dismiss as to all par-

ties except for Leslie M. Gavlin, Kimberly Cheney and John McGavack, Jr., with respect to whom the motion to dismiss was granted.

Public Acts 1979, No. 79-405, amended General Statutes § 10-153f, the subject matter of which is the mediation and arbitration of disagreements arising during the course of collective bargaining between local or regional boards of education and school administrators and teachers. The act established within the state department of education a fifteen person arbitration panel composed of members appointed by the governor with the advice and consent of the General Assembly. The act authorizes members of the arbitration panel, in groups of three, to hear all issues on which the parties to arbitration disagree, and to render a written decision on each issue, accepting the last best offer of one party or the other, as those last best offers have been submitted by the parties to the arbitrators. The act further provides that the decision of the arbitrators is final and binding upon the parties and is not subject to rejection by the legislative body of the local or regional school district or by referendum.

The original plaintiffs sought injunctive relief and a declaratory judgment to determine whether the act violated article first, §§ 2 and 8, article second, article third, § 1, or article tenth, § 1, of the Connecticut constitution, as well as § 1 of the fourteenth amendment to the United States constitution. They further sought relief by way of declaratory judgment to determine: (1) the impact of the Home Rule Act, chapter 99 of the General Statutes, on the act; (2) the effective date of the act in light of General Statutes § 2-32a; (3) the meaning of the phrase "legislative body of the local or regional school district"; and (4) whether the decision of the arbitrators would be subject to amendment or acceptance with conditions set by the legislative body of the school district.

The defendants filed appropriate answers and claimed by way of special defenses that: (1) the plaintiffs lacked standing to bring this action; (2) the complaint failed to set forth a justiciable controversy; (3) the plaintiffs should be left to seek redress by some other form of procedure; and (4) the plaintiffs failed to exhaust available administrative remedies.

Although these consolidated appeals raise the issue of the constitutionality of Public Acts 1979, No. 79-405, we find that the plaintiffs do not have standing to maintain this action.[1] If no standing exists, this court lacks jurisdiction to decide the appeal on its merits. The individual plaintiffs Galvin, Cheney and McGavack, Jr., have not appealed from the order of the trial court dismissing them as plaintiffs in this action. It is, therefore, unnecessary to discuss their claims of standing. The remaining plaintiffs can be classified into two distinct groups, namely, (1) the towns and the West Hartford town council, and (2) the boards of education (including CABE). We shall discuss each group's status separately.

I

We first consider whether the towns of West Hartford, Weston, Montville and the West Hartford town council have standing to maintain this action. The town of West Hartford and the West Hartford town council were original plaintiffs, whereas the towns of Weston and Montville were later allowed to intervene as parties plaintiff. The towns allege that they are municipal corporations of the state of Connecticut, having as

---

[1] We emphasize that the question of standing is not an inquiry into the merits. A plaintiff may have standing and nevertheless lose his suit. Standing requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by allegations of injury. Similarly, standing exists so that a party may attempt to vindicate "arguably" protected interests. *Ducharme* v. *Putnam,* 161 Conn. 135, 139, 285 A.2d 318 (1971); see also *Data Processing Service* v. *Camp,* 397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970).

their organic law a charter in accordance with the provisions of the Home Rule Act and article tenth of the Connecticut constitution. They claim that the act deprives the residents, electors and taxpayers of the town of their right to be governed by persons chosen by and responsible to them. They further assert that the act interferes with their constitutionally protected home rule rights and deprives the municipalities, their residents, electors and taxpayers of the right to establish and maintain their local fiscal authority. They allege that the act gives the arbitrators the power and authority to make fiscal decisions which have a profound effect on the local budgetary process in violation of the home rule provisions of the Connecticut constitution. The plaintiffs seek a declaratory judgment ruling the act unconstitutional. It is a basic principle of our law, however, that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment. *Berlin* v. *Santaguida,* 181 Conn. 421, 423, 435 A.2d 980 (1980); *McGee* v. *Dunnigan,* 138 Conn. 263, 267–68, 83 A.2d 491 (1951).

"The 'fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated.' *Flast* v. *Cohen,* 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947 [1968]." *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 485, 338 A.2d 497 (1973). "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 492, 400 A.2d 726 (1978).

With regard to the plaintiff municipalities, "[i]t has been recognized as a general rule that '[t]owns . . .

are creatures of the state, and though they may question the interpretation, they cannot challenge the legality, of legislation enacted by their creator. *New Haven* v. *New Haven Water Co.,* 132 Conn. 496, 513, 45 A.2d 83 [1946]; *Sanger* v. *Bridgeport,* 124 Conn. 183, 188, 198 A. 746 [1938].' *Waterford* v. *Connecticut State Board of Education,* 148 Conn. 238, 245, 169 A.2d 891 [1961]; *Windsor* v. *Windsor Police Department Employees' Assn., Inc.,* 154 Conn. 530, 539, 227 A.2d 65 [1967]. An exception to this rule has been carved out to allow a municipality, adversely affected by a statute, which is properly in court on a nonconstitutional question to challenge the constitutionality of that statute. *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 425 A.2d 576 [1979]; *Hillier* v. *East Hartford,* 167 Conn. 100, 355 A.2d 1 [1974]; *Tough* v. *Ives,* 162 Conn. 274, 294 A.2d 67 [1972]; *Ducharme* v. *Putnam,* 161 Conn. 135, 285 A.2d 318 [1971]." *Berlin* v. *Santaguida,* supra, 424.[2]

Thus, in order to ascertain whether the plaintiff municipalities have standing to assert their constitutional claims under the exception mentioned above, we must first determine whether the municipalities are "properly in court on a nonconstitutional question." Exceptions to general rules are not created to permit circumvention of these rules, but rather to allow for special circumstances. The plaintiffs brought suit primarily to have Public Acts 1979, No. 79-405, declared unconstitutional. Had they limited their claims to this issue, there is little question that they would have no standing. *Berlin* v. *Santaguida,* supra. In addition to

---

[2] "It is also significant to note that in the cases establishing the exception to the municipality standing rule, the municipalities were in court as defendants whereas in the present case they are the plaintiffs." *Berlin* v. *Santaguida,* 181 Conn. 421, 425, 435 A.2d 980 (1980).

raising constitutional claims, however, the plaintiffs sought injunctive and declaratory relief on certain nonconstitutional issues.

The nonconstitutional questions raised by the plaintiffs were as follows: (1) whether the Home Rule Act, or local charters adopted pursuant to it, may be inconsistent with, supersede or prevail over the act, or at least that portion of the act providing that the decision of the arbitrator is final and binding and not subject to rejection by the local governing body or referendum; (2) what was the effective date of the act, in light of General Statutes § 2-32a; (3) what is the definition of the phrase "legislative body of the local or regional school district"; (4) whether the decision of the arbitrators would be subject to amendment or acceptance with conditions by the legislative body of the school district; and (5) whether, and if so how, the act affects the right to reject, amend, accept with conditions, or otherwise alter the arbitrators' decision of such local bodies or officers as the town board of education, the town board of finance, the superintendent of schools, or the town manager.

A thorough review of the pertinent statutory provisions sheds some light on these claims. General Statutes § 4-176 provides: "Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency *shall* provide by regulation for the filing and *prompt* disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the *remedy* for an aggrieved person shall be an action for declaratory judgment under section 4-175 . . . . " (Emphasis added.)

In conjunction with § 4-176, one must then analyze § 4-175 which supplements § 4-176. General Statutes § 4-175 provides as follows: "The validity or applica-

bility of a regulation or order of an agency may be determined in an action for declaratory judgment brought in the superior court for the judicial district of Hartford-New Britain, if the regulation or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may not be rendered unless the plaintiff has requested the agency to pass upon the validity or applicability of the regulation or order in question, pursuant to section 4-176, and the agency has either so acted or has declined to exercise its discretion thereunder."

Reviewing these provisions, we conclude that, in the present case, the plaintiffs should have first addressed their nonconstitutional claims to the defendant commissioner of education. His agency has the authority to provide the relief sought by the plaintiffs. The relevant statutory provisions set forth an orderly procedure to obtain administrative rulings or interpretations as to any provision of a statute. Once a request has been made, the agency has the obligation to act promptly to issue an appropriate ruling. If the agency fails to act, the plaintiffs may then institute an action seeking declaratory relief. The last sentence of § 4-175 is clear and unequivocal: "A declaratory judgment *may not be rendered unless* the plaintiff has requested the agency to pass upon the validity or applicability of the regulation or order in question, pursuant to section 4-176, and the agency has either so acted or has declined to exercise its discretion thereunder." (Emphasis added.)

Under these statutes the commissioner must have an opportunity to rule on the plaintiffs' nonconstitutional questions. Only when the plaintiffs have requested the agency to pass on these questions will they then be at liberty to seek declaratory relief in accordance with § 4-175. Since the administrative remedy provided by

statute is adequate and complete, and since the plaintiffs have not alleged that the available administrative remedy was either inadequate or incomplete, the trial court had no discretion to entertain the direct declaratory judgment action. *England* v. *Coventry,* 183 Conn. 362, 365, 439 A.2d 372 (1981). A trial court cannot decide arbitrarily that a plaintiff was without adequate relief at the administrative level, and thus allow circumvention of statutory provisions. Had the plaintiff municipalities brought this declaratory judgment action solely on nonconstitutional issues, they would not be properly in court, having bypassed an adequate administrative remedy. It is well established that resort to the administrative process is generally a prerequisite to invoking the jurisdiction of a court. *Sharkey* v. *Stamford,* 196 Conn. 253, 255-57, 492 A.2d 171 (1985); *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 358-59, 377 A.2d 1099 (1977).

Since the plaintiff municipalities did not properly bring their nonconstitutional questions before the trial court, they lack standing to institute an action involving the constitutional issues as well. Thus, they have no standing to institute this action.

## II

Our resolution of the standing issue, as it relates to CABE and the boards of education of West Hartford and Trumbull is similar to that reached with respect to the municipalities. The West Hartford and Trumbull boards of education were original plaintiffs in this action. They allege that they are compelled by the act to discharge their duties subject to the burden and adverse effects created by the act's compulsory arbitration provisions. They claim that the arbitration process interferes with the discharge of their elective duties and with their normal fiscal and budget making process. They further allege that the act violates their

constitutionally protected home rule rights and allows the arbitrators to have a substantial role in the local budgetary process. The Connecticut Association of Boards of Education, Inc. (CABE), a nonprofit Connecticut corporation consisting of members which comprise some 140 of Connecticut's town and regional boards of education, claims that its members will be adversely affected by the act, and that all are potential or actual parties to the binding arbitration process mandated by the act. CABE alleges that the interests of its members are represented by them because of the enormous financial burden that would be imposed were each of them to seek separate plaintiff status in this action. Its claims are basically the same as those propounded by the boards of education of the towns of West Hartford and Trumbull.

Boards of education, like towns, have no standing to challenge the constitutionality of legislation enacted by their creator, though they may question the interpretation of such enactments. *Waterford* v. *Connecticut State Board of Education,* 148 Conn. 238, 245, 169 A.2d 891 (1961). Local boards of education act as agents of the state when they are fulfilling the statutory duties imposed upon them pursuant to article eight, § 1, of the Connecticut constitution. They may also act as agents of municipalities in their function of maintaining control over public schools located within the municipalities' limits. *Cheshire* v. *McKenney,* 182 Conn. 253, 258–59, 438 A.2d 88 (1980). Although the local boards may at times have divided loyalties, "[i]t is an established principle that local charter powers must yield to the superior power of the state when the two enter a field of statewide concern." *Wallingford* v. *Board of Education,* 152 Conn. 568, 574, 210 A.2d 446 (1965).

The trial court found, on the basis of its interpretation of *Board of Education* v. *Allen,* 392 U.S. 236, 88 S. Ct. 1923, 20 L. Ed. 2d 1060 (1968), that the boards

of education had standing. In the *Allen* case, the plaintiffs, members of a local board of education, brought suit requesting declaratory and injunctive relief against the enforcement of a New York statute that required local public school authorities to lend textbooks free of charge to all students in grades seven through twelve at both private and parochial schools. The trial court held that the statute violated the establishment and free exercise of religion clauses of the first amendment to the federal constitution. *Board of Education* v. *Allen,* 51 Misc. 2d 297, 273 N.Y.S.2d 239 (1966). The Appellate Division reversed, ordering the complaint dismissed on the ground that the plaintiffs lacked standing to attack the validity of the statute. *Board of Education* v. *Allen,* 27 App. Div. 2d 69, 276 N.Y.S.2d 234 (1966). The New York Court of Appeals reversed the Appellate Division and upheld the trial court's ruling that the plaintiffs had standing to maintain the action, but also held that the statute was constitutional. *Board of Education* v. *Allen,* 20 N.Y.2d 109, 228 N.E.2d 791, 281 N.Y.S.2d 799 (1967).

In the *Allen* case, the issue of standing was not raised in the United States Supreme Court. The New York Court of Appeals had ruled that the plaintiffs had standing to sue under New York state law. In deciding the standing issue, the Court of Appeals pointed out that if the plaintiffs disobeyed the state statute, the commissioner could remove them from office and withhold public moneys from any disobedient school district. In addition, the Court of Appeals stated that, in New York, the right of a board of education to sue the commissioner had frequently been upheld in actions challenging the constitutionality of New York state statutes. Id., 118.

In the case before us, there is no claim or proof that any member of any board of education would risk expulsion from office prior to the expiration of his or her

term of office, nor is there any arguable claim that compliance with the act would require the performance of an act specifically forbidden by the federal constitution. Thus, these plaintiffs were not faced with the same risk of personal damage as the *Allen* plaintiffs.

In 1976, some eight years subsequent to the *Allen* decision, United States District Judge Blumenfeld in *Athanson* v. *Grasso,* 411 F. Sup. 1153, 1157 (D. Conn. 1976), rejected a claim of standing asserted by Hartford council members. In the *Athanson* case, Judge Blumenfeld stated that *Allen* does not stand for the broad proposition that public officials have standing to challenge the constitutionality of laws with which they do not agree. He specifically distinguished the two cases citing the risk of expulsion from office in the *Allen* case which did not exist in the *Athanson* case. We agree with his interpretation of *Allen.* The plaintiff boards of education have not proved any risk of individual harm and thus the *Allen* case does not apply.

CABE has not alleged any injury to itself nor has it sufficiently alleged that its members have any "legally protected interest that the defendant's action has invaded." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 492, 400 A.2d 726 (1978). Inasmuch as we have determined that its members have no standing to sue under the existing circumstances, CABE can have no standing greater than the entities which it claims to represent. "[N]o matter how zealous the plaintiff may be in its desire to assist its members, it cannot represent them to enforce their rights, unless it has a right, in itself, in the subject of the controversy which a decree will effect. 67 C.J.S. 921, Parties, § 13 (b); see *Darien* v. *Stamford,* 135 Conn. 71, 78, 60 A.2d 764 [1948]." *Connecticut Society of Architects, Inc.* v. *Bank Building & Equipment Corporation,* 151 Conn. 68, 74, 193 A.2d 493 (1963).

There is error and the judgment is set aside because of the lack of standing of the parties; the case is remanded to the trial court with direction to dismiss the action.

In this opinion the other judges concurred.