PLANNING AND ZONING COMMISSION OF THE TOWN OF LEBANON ET AL. *v.* ARPAD GAAL ET AL.
(4591)

HULL, BORDEN and DALY, Js.

Argued November 14, 1986—decision released January 27, 1987

*Timothy S. Hollister,* with whom were *Alice E. DeTora* and, on the brief, *Dwight H. Merriam,* for the appellants (defendants).

*Mary E. Holzworth,* with whom, on the brief, was *John R. Fitzgerald,* for the appellees (plaintiffs).

BORDEN, J. The decisive issue in this appeal is whether property owners, who did not own their property at the time zoning regulations were amended, but who at the time they purchased the property had actual notice of the use restrictions imposed by the amendment, have standing to challenge the sufficiency of the public notice preceding the adoption of the amendment. We hold that under the circumstances of this case the property owners lack standing and, therefore, we dismiss their appeal.

The plaintiffs are the Lebanon planning and zoning commission (commission) and the town of Lebanon (town). The defendants, Arpad Gaal and Maria Gaal, own property located on Red Cedar Lake in Lebanon.

Their tenant, Julius Justh, is also a defendant. We refer herein to the Gaals as the defendants.

The background of this case is complicated and merits full discussion. The town adopted interim zoning regulations in 1962 and permanent regulations in 1966. The permanent regulations created a "Lake District" zone which comprised the area surrounding seven lakes. The regulations permitted the following use: "(1) One seasonal dwelling or camp on a minimum six thousand (6,000) sq. ft. lot, may be erected in any Lake District as shown on the Zoning Map, namely, Williams Pond, Brewster Pond, Stiles Pond, Big Pond, Savin Lake, Spencer Pond and Amston Lake." An eighth Lake, Red Cedar Lake, was included on the town zoning map, but omitted from the text of the regulation itself.

On October 20, 1973, the commission added the words "Red Cedar Lake" to the text of the lake district regulations with the intended effect of subjecting Red Cedar Lake to the seasonal dwelling restrictions. As required by General Statutes § 8-8, the commission published notice in the Norwich Bulletin before the public hearing at which this matter was considered. The published notice did not mention the intention to add the words "Red Cedar Lake" to the lake district regulations.[1] The text of the proposed amendments, how-

---

[1] The published notice set forth in pertinent part: "PUBLIC HEARING OF THE PLANNING AND ZONING COMMISSION ON PROPOSED CHANGES IN ZONING REGULATIONS AND BOUNDARIES

"The Planning and Zoning Commission of the Town of Lebanon will hold a Public Hearing at the Town Hall, Tuesday, July 17, 1973, 8 p.m. E.D.T. to consider the following items: . . . .

"4. To amend the zoning map to extend the Lake Zone along portions of Lake Williams Drive to Leonards Bridge Road.

"5. To increase the lot area required for seasonal homes in a Lake Zone from six (6) to twelve (12) thousand square feet and to increase the frontage requirement to eighty (80) feet.

"Interested citizens are invited to appear and be heard. Written comments will also be accepted. Copies of the proposed changes are on file in the office of the Town Clerk."

ever, were on file in the Lebanon town hall and included language incorporating Red Cedar Lake into the Lake District zone.[2] The commission adopted the proposed amendment.

In 1975, the General Assembly passed Spec. Acts 1975, No. 16, § 20 effective October 1, 1975, which purported to cure any defects in zoning actions. The special act stated, in pertinent part: "[a]ny and all actions taken by any . . . planning and zoning commission . . . otherwise valid except that said . . . planning and zoning commission . . . failed to comply with the requirement or requirements of any general or special law, ordinance or regulation governing contents . . . of the hearing . . . is validated . . . ."

On June 16, 1978, the defendants purchased lot 97 on Red Cedar Lake. On June 17, 1978, they applied for and were issued a building permit for a seasonal cottage. On August 3, 1979 a certificate of occupancy was approved for seasonal use only.[3] Thereafter, the defendants permitted their tenant to occupy the premises on a year-round basis.

On January 22, 1982, and February 11, 1984, the zoning enforcement officer for the town served separate cease and desist orders on the defendants, claiming that the regulations governing the defendants' property permitted only seasonal use. The defendants failed to comply with either order.

---

[2] The proposed amendment provided in pertinent part: "PROPOSED REVISIONS TO THE ZONING REGULATIONS. . . (New language is underlined, old language to be replaced or eliminated is in brackets.) . . .

"5. Article IV – Use District Regulations:

"a. Section 4.3L Lake Zone, part a, (1): One seasonal dwelling or camp on a minimum 12,000 (6,000) sq. ft. lot may be erected in any Lake District, as shown on the Zoning Map surrounding Williams Pond, Brewster Pond, Styles Pond, Big Pond, Savin Lake, Spencer Pond, Amston Lake, Red Cedar Lake."

[3] The certificate of occupancy contains the following statement: " '[N]ote' this dwelling to be used as (seasonal only)."

The plaintiffs then brought this action for civil penalties and an injunction directing the defendants to cease occupying the premises on a year-round basis. The trial court held that the 1973 amended regulations governed, and rendered a judgment ordering each defendant to pay a civil penalty in the amount of $250 and enjoining them from occupying the premises on a year-round basis. The defendants appealed from this judgment.

The defendants claim that the Red Cedar Lake property is not subject to lake district zoning regulations and is in fact unregulated. The mainstay of their claim is that the 1973 amended regulations do not govern their property because notice of the public hearings preceding the amendments was constitutionally defective. They also argue that the failure to publish proper notice rendered the regulations void, and that validating legislation could not cure this constitutional defect. Because the 1973 amendment was constitutionally defective and because the validating legislation could not cure the constitutional defect, the defendants claim, the pre-1973 regulations remained in effect. The defendants also claim that since the 1966 regulations did not by their terms include Red Cedar Lake in the Lake District zone, their property was unregulated, and that they had therefore established a year-round nonconforming use.

We conclude, sua sponte, that the defendants lack standing to challenge the notice of the 1973 proposed amendments. Because that claim is the basis for the defendants' appeal to this court, we do not reach the merits of that appeal.

The issue of standing implicates this court's subject matter jurisdiction; *Middletown* v. *Hartford Electric Light Co.*, 192 Conn. 591, 595, 473 A.2d 787 (1984); and, therefore, must be addressed whether or not it was raised at trial or on appeal. *Ardmare Construc-*

*tion Co.* v. *Freedman,* 191 Conn. 497, 498 n.4, 467 A.2d 674 (1983); *Claydon* v. *Finizie,* 7 Conn. App. 522, 524 n.3, 508 A.2d 840 (1986); *Housing Authority* v. *Local 1161,* 1 Conn. App. 154, 155, 468 A.2d 1251, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). We have previously considered, and rejected where appropriate and necessary, a party's standing even in the absence of briefs and oral argument on the issue. See *Clayton* v. *Finizie,* supra, 524 n.3.

" 'The "fundamental aspect of standing . . . [is that] it *focuses on the party* seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated." *Flast* v. *Cohen,* 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947 [1968].' *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 485, 338 A.2d 497 (1973). 'When standing is put in issue, the question is whether the person whose standing is challenged is *a proper party to request an adjudication of the issue* and not whether the controversy is otherwise justiciable, or whether, on the merits, the [defendant] has a legally protected interest that the [plaintiff's] action has invaded.' *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 492, 400 A.2d 726 (1978)." (Emphasis added.) *Connecticut Assn. of Boards of Education, Inc.* v. *Shedd,* 197 Conn. 554, 558, 499 A.2d 797 (1985). We acknowledge that a justiciable controversy exists in this case, and that the defendants have suffered classical aggrievement in that they have demonstrated that a " ' "specific personal and legal interest has been specially and injuriously affected by the [action of the zoning enforcement officer]." ' *Walls* v. *Planning & Zoning Commission,* 176 Conn. 475, 477–78, 408 A.2d 252 (1979)." *Pierce* v. *Zoning Board of Appeals,* 7 Conn. App. 632, 636, 509 A.2d 1085 (1986). The issue of standing, however, concerns apart from the aggrievement test the question of "whether the interest sought to be protected by the complainant is arguably within the

*zone of interests* to be protected or regulated by the statute or constitutional guarantee in question." (Emphasis added.) *Ducharme* v. *Putnam,* 161 Conn. 135, 139, 285 A.2d 318 (1971), quoting *Data Processing Service Organizations* v. *Camp,* 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1969); see also *State* v. *Nardini,* 187 Conn. 109, 113, 445 A.2d 304 (1982); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 492.

It has been pointed out that the "zone of interests" test bears a family resemblance to the "scope of the risk" doctrine in the law of torts. L. Tribe, American Constitutional Law, pp. 97–98. In tort law, it is not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of standing, it is not enough that a party is injured by an act or omission of another party. The defendant must also have violated some duty owed to the plaintiff. "Applying this doctrine to challenges of official government action or inaction, the relevant question would not be simply whether the official or agency violated the law, but rather whether the official or agency violated any duty to the plaintiff." Id., 98.

Whether the defendants in the present case have standing to challenge the constitutionality of the notice of the 1973 public hearing depends on whether the commission owed any duty to these defendants at that time. This inquiry, in turn, requires an examination of the function and purpose of the constitutional right to notice. See *State* v. *Nardini,* supra, 113.

The purpose of notice is " 'fairly and sufficiently to apprise *those who may be affected* by the proposed action of the nature and character of the proposed action so as to enable them to *prepare intelligently for the hearing.' Passero* v. *Zoning Commission,* 155 Conn. 511, 514, 235 A.2d 660, cert. denied, 390 U.S. 1004, 88 S.

Ct. 1248, 20 L. Ed. 2d 104 [1967]." (Emphasis added.) *Kleinsmith* v. *Planning & Zoning Commission,* 157 Conn. 303, 310, 254 A.2d 486 (1968); see also *Welles* v. *East Windsor,* 185 Conn. 556, 559, 441 A.2d 174 (1981); T. Tondro, Connecticut Land Use Regulation, pp. 174–75. The content of the notice requirement is sufficient "if it gives the average reader reasonable warning that land in which he has an interest may be affected by the legislation proposed." 1 R. Anderson, American Law of Zoning (3d Ed.) § 4.14., p. 247; see also 7 P. Rohan, Zoning and Land Use Controls § 50.03 [1] [d].

The defendants in this case did not own the Red Cedar Lake property in 1973. They could not, at that time, have been affected by the action of the commission; nor could any defect in the notice process have affected their ability to prepare for the public hearing. It is true that the defendants' predecessor in title may have had standing to challenge the zoning regulations in question. That does not, without more, confer the same standing on these defendants. The purpose of notice of a zoning hearing focuses on the ability of the affected property owners to prepare for the hearing. Once that hearing has been held, and once an affected property owner has divested himself of the property, the purpose of the notice has, as to that property, evaporated. In the absence, at least, of any indication that the subsequent owner acquired the property with the purpose of continuing a challenge begun by his predecessor, we see no reason to pass to him the standing that his predecessor may have had. This is especially true in this case, where the defendants had actual notice of the limitations imposed on their property by the zoning regulations which they seek to challenge. They sought and secured a seasonal use building permit and a certificate of occupancy. Therefore, they

cannot complain that fundamental fairness is lacking in the application of the zoning regulations to their property.

The defendants were not, therefore, parties anticipated to be protected by the constitutional requirement of notice and, consequently, the plaintiffs owed no duty to them. It follows from this conclusion that the defendants were not within the " 'zone of interests to be protected by the . . . constitutional guarantee in question.' " *Ducharme* v. *Putnam,* supra. Because the defendants were not within this zone of interest, we hold that under the facts of this case they are not proper parties to request an adjudication of the notice issue; *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra; and lack standing. Accordingly, we decline to review the substantive merits of their claims. *Middletown* v. *Hartford Electric Light Co.,* supra.

The appeal is dismissed.

In this opinion the other judges concurred.