[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs are the owners of 7.3 acres of undeveloped land at the northwest corner of the intersection of Prindle Hill Road and Indian River Road in the town of Orange. The property is in the LI-2 zone (Light Industrial District). As a "special use" within the zone, Planned Residential Development Uses (PRD) uses are expressly permitted. These uses include both single and multi-family dwelling units and contain an affordable housing component which mandates restriction of twenty percent of the units for that purpose. Under the terms of Section 30 of the Orange zoning regulations a special use is treated as a special exception.
On or about November 26, 1991, various applications for land use approvals for this property were filed with the Orange Planning and Zoning Commission. These included: 1) Application for Petition to Amend the Zoning Map and Orange Zoning Regulations; 2) Application for Special Exception Permit or Use; 3) Site Plan Application; 4) Application for a Temporary Special Use, Earth Materials Removal and Filling; 5) Application for Soil Erosion and Sediment Control.
Application Number 1 sought to amend Section 26 of the Zoning Regulations in several material respects. The two most important CT Page 10801 amendments and those which furnish the basis for this appeal are: (i) it requested an increase in the floor area ratio (FAR) requirement for residential buildings from .4 to .7, and (ii) would have made multi-family dwellings special uses (exceptions) in the LI-2 zone instead of under the PRD regulations.
Application Number 2 requested a special exception for the development of 178 residential apartments to contain certain amenities.
Application Number 3 sought approval for these 178 units, twenty percent of which were to have been deed restricted as affordable.
Application Number 4 sought approval to remove earth material from the site in connection with the same development.
Application Number 5 was intended as compliance with the Orange regulations governing soil erosion and sediment control which conditions may have occurred during construction. The commission denied each of these applications.
On June 4, 1992, and in accordance with General Statutes8-30g(d), a modified proposal was submitted which was intended to meet the objections articulated by the commission in its denial of the initial applications. The modification generally would have conformed the proposal to the requirements of the PRD regulations. After negotiations and further changes, the application satisfied the commission in every respect except the requested density. The applicant refused to settle for one unit less than 150 while the .4 FAR prescribed in the PRD regulations would have limited the applicant to approximately 130 units.[1] The commission thereupon granted the special exception subject to compliance with the requirements of the PRD regulations. The owners of the property have appealed pursuant to 8-30g alleging that they are aggrieved by the commission's decision because the approval authorizing the construction of 130 units constitutes a restriction which has a "substantial, adverse impact on the viability of the affordable housing development and the degree of affordability of the affordable housing dwellings" (sic). Section 8-30g(b).
Whether or not this is an affordable housing appeal under 8-30g
does not alter the threshold requirement that the plaintiffs must have standing to bring this appeal. The defendant has interposed a special defense asserting that the plaintiffs have no CT Page 10802 standing because they were not affordable housing applicants within the meaning of 8-30g(b). Fuller v. Planning and Zoning Commission, 2 Conn. App. 340, 346 (1990). The defendant characterizes the issue not as aggrievement but as standing. The defendant reasons that while the plaintiffs maybe aggrieved in the classical sense because they have owned the property involved at all times pertinent to this proceeding, Goldfeld v. Planning and Zoning Commission, 3 Conn. App. 172 (1985), they lack standing because 8-30g(b) establishes a requirement of standing which differs from classical aggrievement.
In Pratt's Corner Partnership v. Southington Planning and Zoning Commission, 9 Conn. L. Rptr. 10, 291 (1993) this court recognized the possibility of such a distinction. In fact, in none of the affordable housing cases decided to date has the need to consider such a distinction been presented.
The right to appeal an affordable housing decision is governed by the first sentence of 8-309(b) which states:
 Any person whose affordable housing application is denied or approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . may appeal such a decision pursuant to the procedures of this section.
Equally material is the last sentence of the subsection which provides "Except as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of . . . 8-8, 8-9, 8-28 or 8-30a, as applicable". Until enactment of 8-30g, 8-8 exclusively governed the right to appeal the decision of a zoning authority. Under 8-8 only aggrieved persons are given that right.
Proof of aggrievement requires compliance with a two-part test: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest, such as is the concern of all members of the community as a whole; second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. Sheridan v. Planning Board, 159 Conn. 1, 10 (1969). CT Page 10803
It is well established that it is not necessary for one who claims to have been aggrieved by the actions of a zoning authority to establish his aggrievement before the board conducting the hearing. Fox v. Zoning Board of Appeals, 146 Conn. 665, 666
(1959). So, to satisfy the aggrievement standard it was not necessary for the D'Amatos to have appeared before or have participated in the proceedings before the Orange Planning and Zoning Commission. Nader v. Altermatt, 166 Conn. 43, 64 n. (1974). Where a zoning ordinance does not specifically require an owner to apply or to authorize the filing of an application, a person has standing to apply if he has a substantial interest in the involved property. Shulman v. Zoning Board of Appeals, 170 Conn. 318, 321
(1976). The plaintiffs contend that they have satisfied the test for aggrievement and therefore the court may proceed to adjudicate their rights under 8-30g. Although the court agrees that the plaintiffs are aggrieved and consequently that it has jurisdiction of this appeal such a conclusion does not end the inquiry.
By its terms 8-30g(b) creates a new level of standing for affordable housing appeals which is not wholly dependent upon ownership, possession or control of a property interest. See, Richards v. Planning and Zoning Commission, 170 Conn. 318, (1976).[2]
This provision of the statute is conspicuous its omission of the term "aggrieved". The court's exercise in construing the statute compels a reminder of certain settled principles of statutory construction which warrant repetition. Words of a statute must be construed according to their commonly approved usage. General Statutes 1-1(a) Cos Cob Volunteer Fire Co. No. 1, Inc. v. FOIC, 212 Conn. 100, 105 (1989). Where the legislative intent is clear there is no room for statutory construction. Keleman v. Rimrock Corporation, 207 Conn. 599, 606 (1988). In construing a statute, common sense must be used, and the court will assume that the legislature intended to accomplish a reasonable and rational result. Ford Motor Credit Co. v. B.W. Beardsley, Inc.,208 Conn. 13, 20 (1988). Where . . . the language of the statute is clear and unambiguous, courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for doing so. Simko v. Zoning Board of Appeals, 205 Conn. 413, 418 (1987) modified, 206 Conn. 374
(1988). A statute does not become ambiguous solely because the parties disagree as to its meaning. Ford Motor Credit Co. v. B.W. Beardsley, Inc., supra. Rustici v. Stonington, 174 Conn. 10, 13
(1977). A statute should be construed so that no word, phrase or clause will be rendered meaningless. Verrastro v. Sivertsen,188 Conn. 213, 221 (1982). The factors that this court looks to in CT Page 10804 construing a statute include its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment. Id.
Ostensibly, subsection (b) confers standing to appeal upon any person, whether or not aggrieved, whose affordable housing application is denied or approved with restrictions that adversely impact viability in a substantial way. "Affordable housing application" is defined in 8-30g(a)(2) as "any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing". (Emphasis added). Thus, it must first be determined whether the plaintiffs were persons who filed an affordable housing application within the meaning of the statute. This inquiry simply asks "who was the real party applicant, the D'Amatos, Lincoln Property Company, or both? P.B. 104, Richards v. Planning and Zoning Commission, supra at 323. In Richards, although the applicant was a non-owner, the court found sufficient indicia of standing so as to qualify the applicant. The test that the court applied was "whether the applicant is in control of the property, whether he is in possession or has a present or future right to possession, whether the use applied for is consistent with the applicant's interest in the property, and the extent of interest of other persons in the same property". In the context of aggrievement, the Appellate Court has considered special circumstances in finding aggrievement such as whether the applicant non-owner had written consent from the owner to use the property and whether the nonowner applicant appeared before the board as an applicant. DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 376
(1991).
An examination of the various original applications filed with the defendant reveals that whenever the application forms called for the name of the owner, plaintiffs' names were inserted[3] and whenever they called for an applicant, Lincoln Property Company (hereinafter "Lincoln") was cited. Each of them was signed by both Louis J. D'Amato and an agent of Lincoln except that the applications for the change in zoning (#1) and for soil erosion/sediment control (#5) were signed only by Lincoln's agents. Furthermore, the modified proposal was submitted and signed by Lincoln's agent which therein referred to itself as the "applicants".
The record itself is replete with references to Lincoln as the applicant. In fact, Lincoln's agent verbally identified Lincoln as CT Page 10805 the applicant at the February 4, 1992 public hearing.
The entire presentation described Lincoln's plans for the property and its history of success elsewhere. The record is unambiguous that the commission regarded Lincoln as the applicant both in its legal notices and in its efforts to gain information about the development. The plans and drawings identify Lincoln as the developer. The evidence at trial negated any legal interest in Lincoln by the D'Amatos. Their only relationship with Lincoln was that of contract vendor.[4]
"The "fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated." Flast v. Cohen,392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).' Hartford Kosher Caterers, Inc. v. Gazda, 165 Conn. 478, 485, 338 A.2d 497 (1973). `When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the [defendant] has a legally protected interest that the [plaintiff's] action has invaded.' Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483,492, 400 A.2d 726 (1978)." (Emphasis added). Connecticut Assn. of Boards of Education, Inc. v. Shedd, 197 Conn. 554, 558,499 A.2d 797 (1985). We acknowledge that a justiciable controversy exists in this case, and that the defendants have suffered classical aggrievement in that they have demonstrated that a "`"specific personal and legal interest has been specially and injuriously affected by the [action of the zoning enforcement officer].'" Walls v. Planning and Zoning Commission, 176 Conn. 475 477-78,408 A.2d 252 (1979)." Pierce v. Zoning Board of Appeals, 7 Conn. App. 632,636, 509 A.2d 1085 (1986). The issue of standing, however, concerns apart from the aggrievement test the question of "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (Emphasis added). Ducharme v. Putnam, 161 Conn. 135, 139, 285 A.2d 318
(1971), quoting Data Processing Service Organizations v. Camp,397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1969); see also State v. Nardini, 187 Conn. 109, 113, 445 A.2d 304 (1982); Mystic Marinelife Aquarium, Inc. v. Gill, supra, 492.
It has been pointed out that the `zone of interest' test bears a family resemblance to the `scope of the risk' doctrine in the law of torts. L. Tribe, American Constitutional Law, pp. 97-98. In CT Page 10806 tort law, it is not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of standing, it is not enough that a party is injured by an act or omission of another party. The defendant must also have violated some duty owed to the plaintiff. `Applying this doctrine to challenges of official government action or inaction, the relevant question would not be simply whether the official agency violated the law, but rather whether the official or agency violated any duty to the plaintiff.''" Id., at 98. Planning and Zoning Commission v. Gaal,9 Conn. App. 538, 543 (1987).
Just like the defendants in Gaal, supra, there is no question that the D'Amatos have suffered classic aggrievement by virtue of their ownership of the property in question. However, the court must go farther and apply the principles which govern standing and thus ascertain whether the Orange Planning and Zoning Commission owed a duty to the D'Amatos and if so, whether it violated that duty. As this court analyzes 8-30g the defendant owed no duty under this statute to the D'Amatos but rather owed its duty to Lincoln who clearly was the only person whose affordable housing application was approved with nonviable restrictions. This is not to say that the defendant did not owe a duty to the D'Amatos under which it clearly did. Whether the defendants owed a duty to the class of low and moderate income persons who inhabit the State of Connecticut is an issue that need not be decided today.
This conclusion is consistent with the legislature's intent to confer special status on any person who seeks to build affordable housing pursuant to the requirements of 8-30g. Appropriate to this purpose is a limitation upon the applicability of the statute to those who propose to develop the property for that use.
A similar issue was involved in Kaufman v. Danbury Zoning Commission, 9 Conn. L. Rptr. 19, 594 (1993). There, the statutory terms, "propose" and "develop" were discussed. Relying on dictionary definitions, "propose" was defined as "to put forth for consideration or acceptance" Id. at 596. Likewise, "housing development" was defined as "a planned scheme for the construction of houses, street improvements and utilities in a particular area" Ibid. Resort to dictionary definitions has been approved in this situation. Bolt Technologies v. Commissioner of Revenue Services,213 Conn. 220, 228 (1989). Applying these definitions to the plaintiffs it is apparent from the record that they did not propose to develop the affordable housing which was the subject of the CT Page 10807 Lincoln application. Moreover at trial, the plaintiffs offered no evidence of any plan or scheme for the construction of housing either of their own design or that of Lincoln's. It is not ownership of the property which is controlling in the context of affordable housing but rather the seriousness of the plans and proposals of the applicant. Bailey v. Board of Appeals,345 N.E.2d 367 (1976). It is apparent from the fact that Lincoln chose not to appeal the defendant's decision[5] and from the further fact that the record is devoid of any indication that these plaintiffs intended to take over Lincoln's plans or substitute their own that the plaintiffs are not persons who propose to develop affordable housing. Therefore, the plaintiffs have no standing to bring this appeal.
Ordinarily, absence of standing on the part of the plaintiff deprives the court of jurisdiction, Connecticut Association of Board of Education, Inc. v. Shedd, supra. However, standing in this particular case arises only with respect to whether the plaintiffs are entitled to avail themselves of the extraordinary procedure and remedies provided by 8-30g. Clearly, the court has jurisdiction over the subject matter of this proceeding as a conventional zoning appeal. Creative Development for Colchester, Inc. v. Colchester Zoning and Planning Commission,5 Conn. L. Rptr. 95
(1991). Accordingly, the plaintiffs are entitled to pursue their appeal in the traditional manner because the evidence presented at trial satisfied the test for classical aggrievement.
This appeal is transferred to the Judicial District of Ansonia/Milford for further proceedings in accordance with 8-8.
MOTTOLESE, J.