[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS
The plaintiff's complaint alleges as follows: The plaintiff, Fred Brunoli Sons Inc. ("FBS"), is a corporation. The plaintiff, John F. Brunoli ("Jack Brunoli"), is currently the sole shareholder and president of FBS.
Prior to October, 1993, the defendant Joseph C. Brunoli and his brother, Modesto Brunoli (the plaintiff's father), owned in equal part all of the shares of the issued and outstanding capital stock of FBS. On October 28, 1993 the defendant entered into a Stock Purchase Agreement ("Agreement"), with Modesto Brunoli, the plaintiff Jack Brunoli, and the defendant's son, James Brunoli. Pursuant to the Agreement, the defendant and Modesto Brunoli transferred all of their right, title and interest in the FBS capital stock to their sons, James and Jack Brunoli, respectively. Thereafter, in 1998, James Brunoli transferred his entire interest in FBS to the plaintiff Jack Brunoli, making the latter the current owner of 100% of the shares of stock in FBS.
The plaintiff's complaint is in two counts. The first count, brought against the defendant Joseph Brunoli on behalf of Jack Brunoli only, alleges breach of contract, as well as a breach of CT Page 4818 the implied covenant of good faith and fair dealing. The plaintiff alleges that as a result of the defendant's improper accounting, reporting and management methods of FBS, at the time that the plaintiff entered into the Agreement on October 28, 1993, FBS stock was significantly overvalued. Specifically, the plaintiff alleges that FBS net worth was over 1.25 million dollars less than had been previously indicated to him. As a result of the plaintiff's purchase of the overvalued stock, the plaintiff claims that he has suffered significant damages, including personal exposure to millions of dollars of liability.
The second count against the defendant Joseph Brunoli, brought on behalf of FBS only, alleges a default on a promissory note executed by the defendant in favor of FBS. Specifically, the plaintiff FBS alleges that pursuant to the Agreement, the defendant on October 28, 1993, executed a promissory note promising to repay FBS $171,000, plus interest at six percent over an extended period of time. FBS alleges that the defendant has defaulted on the note.
Presently before the court is the defendant's motion to dismiss both the first and second counts of the complaint on the ground that the plaintiff's lack standing, and therefore the court is without subject matter jurisdiction. Both plaintiff's and defendant have briefed the issues, had oral argument, stipulated to the authenticity of the purchase agreement, note and a non-competition agreement between FBS and defendant and presented sworn testimony. Defendant has submitted an affidavit and the individual plaintiff has testified at the hearing.
The issue of standing is properly raised on a motion to dismiss. Sadloski v. Town of Manchester, 235 Conn. 637, 650,668 A.2d 1314 (1995). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Community Collaboration of Bridgeport,Inc. v. Ganim, 241 Conn. 546, 552, 698 A.2d 245 (1997).
 I. Count One
CT Page 4819
The defendant argues in support of his motion to dismiss the first count of the plaintiff's complaint that Jack Brunoli lacks standing to bring his breach of contract claim against the defendant as he was neither a party to, nor an intended beneficiary of, the Agreement to which defendant was a party. The defendant claims that the Agreement "actually [was] two separate agreements/transactions memorialized in one document: (1) The sale of stock from Modesto F. Brunoli to the plaintiff, [Jack] Brunoli; and (2) the sale of stock from Joseph C. Brunoli to James D. Brunoli." (Def.'s Mem. Supp. p. 4.) The defendant claims that because Jack Brunoli actually purchased his stock in FBS from his father, Modesto Brunoli, and not from the defendant Joseph Brunoli, the plaintiff and defendant lack the necessary privity of contract for the plaintiff to have standing in this action.
The defendant also argues with respect to the first count that the plaintiff was not an intended third party beneficiary of the Agreement.[1] Therefore, he claims the plaintiff's lack of privity with the defendant requires the dismissal of the first count of the complaint.
The plaintiff Jack Brunoli argues in opposition to the defendant's motion to dismiss the first count that he is a party to the Agreement (along with the defendant Joseph Brunoli, James Brunoli and Modesto Brunoli), that he is in privity of contract with the defendant, and has standing to maintain his breach of contract claim. Specifically, the plaintiff claims that although the physical transfer of the FBS stock occurred between fathers and sons, that single fact does not convert the Agreement from one complete agreement into two separate agreements.
A plaintiff must have standing to invoke the subject matter jurisdiction of the court. Tomlinson v. Board of Education,226 Conn. 704, 717, 629 A.2d 333 (1993); Unisys Corp. v. Dept. ofLabor, 220 Conn. 689, 693, 600 A.2d 1019 (1991); Planning Zoning Board v. Gaal, 9 Conn. App. 538, 543, 520 A.2d 246, cert. denied, 203 Conn. 803, 525 A.2d 1352 (1987). "Where a party is found to lack standing, the court is . . . without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) Monroe v. Horwitch, 215 Conn. 469, 473, 576 A.2d 1280
(1990); Christ-Janer v. A.F. Conte Co., 8 Conn. App. 83, 90,511 A.2d 1017 (1986). CT Page 4820
"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) Christ-Janer v.A.F. Conte Co., supra, 8 Conn. App. 89-90. "Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." Monroe v. Horwitch, supra, 215 Conn. 472-73; seeBaker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663
(1962).
The plaintiff has the burden of proving standing, Sadloski v.Town of Manchester, supra, 235 Conn. 648-49; American-Republican,Inc. v. Waterbury, 183 Conn. 523, 526, 441 A.2d 23 (1981), but "[e]very presumption must be indulged which favors the jurisdiction of the court." Six Carpenters, Inc. v. BeachCarpenters Corp., 172 Conn. 1, 6, 372 A.2d 123 (1976).
Where a defendant challenges the plaintiff's standing to bring a breach of contract claim against him, on the ground that the defendant and the plaintiff were not in privity of contract, the court must first determine whether the two individuals were, in fact, parties to the particular agreement. See Christ-Janer v.A.F. Conte Co., supra, 8 Conn. App. 90 (because evidence demonstrated that contract was between non-litigant corporation of which plaintiff was shareholder, and defendant, plaintiff individually lacked standing to maintain breach of contract claim against defendant).
The crucial question in this case is whether, based upon the limited evidence before the court at this preliminary stage, the plaintiff Jack Brunoli entered into a contract with, inter alia, the defendant uncle, or only with his father, Modesto Brunoli, when the cousins Jack and James Brunoli agreed to buy their father's stock. The language of the Stock Purchase Agreement, and the testimony of plaintiff, are persuasive in establishing that all four men were parties to one contract.
It is well established in Connecticut that "[w]here the CT Page 4821 language of a contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather from one party's subjective perception of the terms." (Internal quotation marks omitted.) 24 Leggett Street Ltd.Partnership v. Beacon Industries, Inc., 239 Conn. 284, 295,685 A.2d 305 (1996).
"When a contract provision is unambiguous, its interpretation presents an issue of law for determination by the court. . . . When, however, a contract provision is ambiguous or contract provisions are internally inconsistent, a question of fact is involved." (Citations omitted; internal quotation marks omitted.)Bank of Boston Connecticut v. Avon Meadow Associates,40 Conn. App. 536, 540, 671 A.2d 1310, cert. denied, 237 Conn. 905,674 A.2d 1329 (1996). "The construction of a contract is usually a question of fact because the interpretation of its language is a search for the intent of the parties, making contractual intent a classic question of fact." Foley v. Huntington Company,42 Conn. App. 712, 730-31, 682 A.2d 1026 (1996).
The Stock Purchase Agreement provides in its opening proviso:
"THIS STOCK PURCHASE AGREEMENT (the "Agreement") dated October 28, 1993 is by and among Modesto F. Brunoli . . . Joseph C. Brunoli . . . (individually, "Seller" and collectively, the "Sellers"), and James D. Brunoli . . . and [Jack] Brunoli . . . (individually, "Buyer" and collectively, the "Buyers"). (Emphasis added) (Def's Mem. Supp., Exhibit A.)
Furthermore, within the recitals section of the Agreement, it is provided that "2. The Sellers desire to sell to the Buyers, and the Buyers desire to purchase from the Sellers . . . [FBS] Capital Stock (the "Shares") on the terms and subject to the conditions specified herein[.]" (Def's Mem. Supp., Exhibit A.) The Agreements use of the language "by and among" in its opening proviso, in addition to its specific references to the parties as "Sellers" and "Buyers," demonstrates the Agreements intent to establish encompassing contractual obligations on the part of all of the parties to the Agreement, not just between fathers and sons, respectively.
Reinforcing this interpretation are numerous warranties and CT Page 4822 representations, which were made by the sellers, Joseph and Modesto Brunoli, collectively, to the buyers, James and Jack Brunoli, collectively and the converse. These are encompassed within the Stock Purchase Agreement at, inter alia, paragraphs 3, 4, 6, 7, and 9. In those clauses, each buyer makes certain representations to each of the sellers, each of the sellers makes certain representations to each buyer, the buyers agree to have sellers released from certain bank guarantees, the sellers agree to cooperate in the transfer of the business to the buyers and indemnification is detailed.
This view of a comprehensive agreement for the sale of a business between four members of two generations, and not merely two stock sales placed for convenience in one document, is buttressed by the individual plaintiff's testimony that he couldn't simply purchase his stock alone, that the business purchase had to be done jointly with his cousin and that lines of credit and a lease were part of the overall transaction.
Defendant has correctly pointed out certain phrasing in the agreement that can be seen as inconsistent with the concept of a four-way agreement. For example the Agreement also provides that:
"1. Sale of the Shares. In reliance upon the representations and warranties contained herein and subject to the conditions specified herein, Joseph Brunoli hereby agrees to sell, convey, transfer and deliver to James D. Brunoli the number of shares set forth on Schedule 1[2] and James D. Brunoli hereby agrees to purchase such Shares. Likewise, Modesto F. Brunoli hereby agrees to sell, convey, transfer and deliver to [Jack] F. Brunoli the number of shares set forth on Schedule 1 and [Jack] F. Brunoli hereby agrees to purchase such Shares."
The foregoing language is arguably the creation of two separate agreements and is superficially at odds with the other portions of the Agreement. In light of such, the court is required to interpret the contract to determine whether privity of contract exists between the parties.
Reading the Agreement as a whole, in light of the other clauses of the Agreement and the context provided by Jack Brunoli's testimony, the court finds the foregoing language is more reasonably construed as merely establishing the mechanics for the carrying out of an overall Agreement, between four individuals. CT Page 4823
In light of all the above, the court finds that plaintiff has met his burden of proving that he has standing to maintain his breach of contract claim. The Motion to Dismiss is denied as to Count One.
 II. Count Two
With respect to the second count of the complaint, the defendant argues that the court lacks subject matter jurisdiction over FBS claim of default, as he is not in default on the note because section 6.3 of the Stock Purchase Agreement expressly suspends his duty to pay on the promissory note. FBS argues in opposition that it has standing to maintain its action against the defendant because it is the holder of a note, executed by the defendant, (which is proven) and that such note is in default. FBS also argues, correctly, that there is a difference between challenging a party's standing to maintain a cause of action, and challenging the merits of the cause of action itself.
Here, the defendant's argument concerns only the legal merits of FBS's claim; it does not address the issue of FBS's standing to bring that claim. In essence, the defendant makes the argument that because there is no meritorious cause of action before the court, the court lacks jurisdiction over the claim.
It is well established that the "question of standing does not involve an inquiry into the merits of the case. It merely requires the party to make allegations of a colorable claim of injury to an interest. . . ." State v. Pierson, 208 Conn. 683,687, 546 A.2d 268 (1988). Whether a party will be successful on the merits is immaterial to the issue of standing. Reitzer v.Board of Trustees of State Colleges, 2 Conn. App. 196, 201,477 A.2d 129 (1984). Accordingly, the motion to dismiss the second count of the plaintiff's complaint is also denied.
James T. Graham Superior Court Judge