AMERICAN-REPUBLICAN, INC., ET AL. *v.* CITY OF
WATERBURY ET AL.

BOGDANSKI, PETERS, ARMENTANO, SHEA and WRIGHT, Js.

524

Argued December 11, 1980—decision released April 21, 1981

*Donald McPartland,* with whom, on the brief, were *William J. Secor, Jr.,* and *Pamela M. Taylor,* for the appellants (plaintiffs).

*James F. Meenan,* assistant corporation counsel, with whom, on the brief, were *Carl R. Cicchetti* and *Anthony A. Casagrande,* for the appellee (named defendant).

*Dennis M. Buckley,* for the appellee (defendant Mattatuck Construction Company).

SHEA, J. In this action the plaintiffs, who are taxpayers of the defendant city of Waterbury, sought an injunction ordering rescission of the purchase of certain real estate made by the city from the defendant Mattatuck Construction, Inc. (Mattatuck). The complaint alleged that the purchase of the land was illegal because certain procedural requirements for such an acquisition were not followed. The trial court rendered judgment for

the defendants, concluding that the sale of the property had been legally consummated and also that, even if some technical deficiency had been found, the circumstances proved by the evidence would not have warranted the annulment of the completed transaction.

Upon this appeal the issues raised by the parties are (1) whether the plaintiffs have standing to maintain the action; (2) whether the city has fulfilled the requirements of the pertinent statutes and ordinances for purchasing the real estate; and (3) whether any such noncompliance would justify a rescission of the transaction. Our conclusion that the trial court did not err in finding that the plaintiffs did have the requisite standing and that the purchase was accomplished in accordance with the applicable laws makes it unnecessary for us to consider the third issue.

The essential facts are not disputed and may be summarized as follows: The housing authority of the city of Waterbury, concluding that there was a substantial need for additional public housing for the elderly, requested that the land in question, owned by the defendant Mattatuck, be acquired by the city for that purpose. Accordingly this housing for the elderly project was included in the city's application for approval of a plan which it submitted to the Department of Housing and Urban Development (HUD), a federal agency, pursuant to the Housing and Community Development Act of 1974. The plan was approved on April 12, 1976, and federal funds then became available for purchase of the Mattatuck property. A contract for the purchase of the land at a price of $216,500 was made on October 14, 1976. The closing of title occurred on

December 30, 1976. Approximately $102,000 was paid out of the funds received at the closing to satisfy various encumbrances on the property. Mattatuck had disbursed most of the balance of the proceeds of the sale for its own business purposes by the time an ex parte temporary injunction was issued on February 11, 1977, when this suit was commenced.

## I

"[N]o person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity." *Bassett* v. *Desmond,* 140 Conn. 426, 430, 101 A.2d 294 (1953). Standing does not result automatically upon establishing that a party qualifies as a taxpayer. A plaintiff who relies upon such a status in bringing an action to question some alleged illegal activity on the part of municipal officials must also prove that the transaction involved will probably "result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury." Ibid. Once a probable increase in his tax burden from the challenged activity has been shown, a plaintiff has passed the threshold of standing even though the pecuniary effect upon him may be extremely small. Id., 432; *Beard's Appeal,* 64 Conn. 526, 534, 30 A. 775 (1894); 18 McQuillin, Municipal Corporations § 52.13.

The trial court found, in accordance with the allegations of the complaint, that the purchase of the land by the city for later transfer to the housing authority for the construction of housing for the elderly, even though the funds used came from the

federal government, would remove this property from the municipal tax list. It was also found that in the adjustment of taxes at the transfer of title the defendant Mattatuck was excused from the payment of three-quarters of the tax which had been imposed upon the property for the current year. The city challenges the finding that the purchase will result in a loss of tax revenue by referring in its brief to some minutes of a meeting of the planning commission at which the commissioners discussed the tax impact of the contemplated elderly housing project and concluded that upon ultimate completion of the project the city would receive more revenue in the form of payments in lieu of taxes from the state than if the land remained unimproved with its current assessment. We do not find this opinion of the commissioners sufficiently persuasive to overcome the normal deference extended to factual determinations of the trial court. Even if the commissioners prove to be correct in their prediction, the immediate impact upon the plaintiffs of the loss of tax revenue until completion of the project cannot be overlooked. We completely fail to understand the defendants' contention that no loss of tax revenue could have resulted from the tax adjustment with Mattatuck.

Standing "is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." *Maloney* v. *Pac,* 183 Conn. 313, 320, 439 A.2d 349 (1981). A colorable claim of a pecuniary loss, regardless of its magnitude, satisfies this criterion for standing. We have no occasion, therefore, to

consider the alternative ground for standing advanced by the plaintiffs.[1] We agree with the trial court that the plaintiffs have established their standing as taxpayers to challenge the transaction in question.

## II

The plaintiffs claim three procedural irregularities in obtaining authorization for the land purchase.

First, it is urged that the requirement of § 4 of Public Acts 1975, No. 75-443[2] that a community

[1] The plaintiffs claim standing also by virtue of the allegation of the complaint that no public hearing was held upon the acquisition of the land for the elderly housing project as required by General Statutes § 8-169e (c). The trial court found standing by virtue of this claim also.

[2] Section 4 of Public Acts 1975, No. 75-443 provides in part as follows: "(a) A community development plan prepared by a municipality pursuant to subsection (a) of section 3 of this act shall be filed at the office of the city clerk or similar office within the municipality for public inspection and transmitted to the legislative body at least sixty days prior to the commencement of the program period. Such plan shall simultaneously be referred to the planning agency of the municipality for its review and comment and the housing authority of the municipality for its review and comment on the housing assistance plan required under subdivision (5) of subsection (a) of section 3 of this act. Where said plan contemplates activities within a development project area, harbor improvement project area, housing site development project area, redevelopment project area or urban renewal project area, or if the plan contemplates human resources development activities, the plan shall likewise be simultaneously referred to the economic development agency, harbor improvement agency, housing site development agency, or redevelopment agency, or human resources development agency, as the case may be, for review and comment on the portion of the community development plan falling within the jurisdiction of the particular agency.

"(b) Any agency to which a community development plan is referred, pursuant to subsection (a) of this section, shall submit written comments to the legislative body not more than thirty days after receipt of the plan by such agency. Failure of the agency to comment within thirty days shall be deemed approval of such plan by such agency . . . ."

development plan be filed with the city clerk for public inspection, transmitted to the legislative body, and referred to the planning commission and other agencies "at least sixty days prior to the commencement of the program period" should be construed to force the legislative body to defer approval of the plan until the expiration of the period of thirty days which the statute allows for the agencies to comment upon the plan. The finding of the trial court that the statutory mandate for filing the plan "at least sixty days prior to the commencement of the program period" was fulfilled is not contested. "We are not permitted to supply a statutory omission merely because we feel there is good reason to do so." *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975). The legislature has now remedied by amendment the problem raised by the provisions in question, which the plaintiffs seek to cure by unwarranted judicial interpretation. Public Acts 1976, No. 76-70.[3] The statute now provides for filing the plan and referring it to the agencies for comment forty-five days before its approval by the legislative body rather than sixty days before commencement of the program period. General Statutes § 8-169d (a). The adoption of this amendment militates strongly against the construction urged by the plaintiffs. We cannot assume that the legislature would perform the useless act

[3] Public Acts 1976, No. 76-70 became effective on April 21, 1976. The community development plan involved here was filed with the town clerk on February 12, 1976, and transmitted to the board of aldermen on the same date. It was approved by the board on February 23, 1976. The next day, February 24, 1976, it was referred to the city plan commission, the housing authority, and the urban renewal agency. All of these dates are more than sixty days prior to the commencement of the program period, January 27, 1976, and also preceded the effective date of Public Act 76-70.

of correcting a deficiency in the statute which did not exist.[4] See *State ex rel. Markley* v. *Bartlett,* 130 Conn. 88, 93, 32 A.2d 58 (1943).

The plaintiffs next contend that the court erred in finding that no public hearing was required for the acquisition of the Mattatuck property. General Statutes § 8-169e (c)[5] provides that no property acquisition shall be made pursuant to a community development plan without a public hearing unless the property was "specifically identified for acquisition" in the plan. The apparent reason for excepting properties identified in the plan from the public hearing requirement is that the subject of their acquisition would presumably have come before the two public hearings which must be held before approval of the plan. Public Acts 1975, No. 75-443, §4(b); see General Statutes § 8-169d (b). Whether

---

[4] We recognize that an amendment to a statute may be adopted "with the purpose of clarifying an existing uncertainty in the law, as opposed to enacting a deliberate change." *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 245, 377 A.2d 305 (1977). The changes effectuated by § 2 of Public Acts 1976, No. 76-70 did not clarify any ambiguity in the time schedule for filing and referring a community development plan but created a different schedule keyed to the date of approval of the plan "by the legislative body" rather than to the date of "commencement of the program period" as provided in § 4 of Public Acts 1975, No. 75-443.

[5] General Statutes § 8-169e (c) provides as follows:

"(c) No property shall be acquired pursuant to a community development plan unless such acquisition is approved by the legislative body of the municipality (1) after a public hearing, notice of which has been published at least once not less than two weeks prior to such hearing in a newspaper having general circulation in the municipality and (2) the legislative body finds that adequate relocation resources are available. If such property was specifically identified for acquisition in the community development plan or the acquisition of such property is part of a development plan, harbor improvement plan, housing site development plan, redevelopment plan or urban renewal plan, no public hearing shall be required pursuant to subdivision (1) of this subsection."

the property was properly identified in the plan was the principal factual issue litigated and substantial amounts of testimony and many exhibits were presented. The trial court found the issue for the defendants, relying partly upon the testimony of the community development coordinator that at the hearing[6] held by the board of aldermen prior to its approval of the plan, several maps showing the precise location of the Mattatuck property were used to supplement the information contained in the document which has been referred to as the "community development plan." It also appeared that the federal agency involved was satisfied that the plan sufficiently identified this property. We conclude that there was substantial evidence to support the finding of the trial court. Consequently, it was not necessary that a special public hearing upon the acquisition of the property be held.

The final claim of the plaintiffs is that the requirement of legislative approval of a land acquisition in § 8-169e (c) was not met simply by approval of the community development plan on the part of the board of aldermen even if the property were adequately identified in the plan. They maintain that the elimination of the need for an additional public hearing for the acquisition of properties identified in the plan does not remove the necessity for separate approval of each acquisition by the legislative body after the plan has been adopted. The trial court rejected this interpretation of the statute and found that the board of aldermen

[6] Public Acts 1975, No. 75-443, § 4(b) provided that "[p]rior to the approval of a community development plan, at least two public hearings shall be held on such plan, at least one of which shall have been held by the legislative body." The plaintiffs do not claim any noncompliance with this provision.

approved the acquisition at the time they approved the plan and voted to authorize the mayor to execute any documents and "to do other things necessary to implement and carry out the program." We agree with this conclusion.

There is no error.

In this opinion the other judges concurred.