### DOUBLE I LIMITED PARTNERSHIP *v.* TOWN OF GLASTONBURY (5505)

DUPONT, C. J., BIELUCH and FOTI, Js.

*(One judge dissenting)*

Argued January 14—decision released April 5, 1988

*Bruce S. Beck,* with whom, on the brief, was *Steven D. Zuboff,* for the appellant (plaintiff).

*Steven W. Varney,* for the appellee (named defendant).

*Sharon H. Purtill,* for the appellee (defendant D. W. Fish).

FOTI, J. The plaintiff appeals from the judgment rendered after the trial court granted the defendants'[1] motion to strike. The sole issue on appeal is whether the trial court erred in striking the plaintiff's complaint for failure to allege facts sufficient to establish standing to challenge the disbursement of funds for the improvement of an unimproved road located in the town of Glastonbury.

The plaintiff brought an action against the defendant town of Glastonbury, in one count, seeking an injunction to prohibit the disbursement of funds for the improvement of an unimproved road within the town. The town moved to strike the complaint because the plaintiff lacked standing to challenge the actions of the town; the court granted this motion to strike. The plaintiff filed a substitute complaint which the court again struck for failure to allege facts sufficient to establish standing; the plaintiff then moved for permission to file a second amended complaint seventeen days after the court granted the defendants' second motion to strike; the defendants objected to the plaintiff's motion to amend on the grounds that the complaint was filed two days late; Practice Book § 157; and because the third complaint failed to allege any new facts upon which

---

[1] The original complaint named the town of Glastonbury as the sole defendant in this action. Subsequent to the plaintiff's filing suit, Donald W. Fish moved to be joined as a party defendant claiming an interest in the disposition of the suit because he owned property abutting the road the town planned to improve. The plaintiff did not object to Fish's motion to be joined and the court granted his motion.

relief could be granted. The court sustained the defendants' objection and subsequently granted their motion for judgment.

The facts relevant to this appeal are as follows. The town maintains an unimproved road fund (fund) which is comprised of monies allocated from funds appropriated to the state's commissioner of transportation by the legislature pursuant to General Statutes § 13a-175d.[2] In 1985, the balance in the fund was approximately $107,000. That year, the defendant, Donald W. Fish, made a request that money be allocated for the purpose of improving Birch Mountain Road, an unimproved public road in the town. The plaintiff claims that it has standing to challenge the action of the town as a taxpayer; as an owner of property abutting another unimproved public road in the town and under article first, § 1, of the Connecticut constitution. We disagree.

In reviewing a "judgment following the granting of a motion to strike, we take the facts to be those as alleged in the substituted complaint, construed in a manner most favorable to the pleader. For purposes of appeal, all well pleaded facts and those facts necessarily implied and fairly provable from the allegations are taken as admitted." *Fortini* v. *New England Log Homes, Inc.,* 4 Conn. App. 132, 134, 492 A.2d 545 (1985).

The issue of standing implicates the court's subject matter jurisdiction. *Planning & Zoning Commission* v. *Gaal,* 9 Conn. App. 538, 542, 520 A.2d 246 (1987). Cen-

---

[2] General Statutes § 13a-175d provides in relevant part: "There shall be allocated from funds appropriated to the commissioner of transportation for town-aid grants for roads the sum of one million dollars annually, to be distributed pro rata to the towns in the state on the basis of the total mileage of unimproved highways in each town, for the improvement or maintenance of dirt and unimproved roads, including bridges on such roads . . . ."

tral to establishing standing is some allegation that the plaintiff has been aggrieved by the actions of the municipal entity.

" 'The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, "the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." ' *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978), quoting *Nader* v. *Altermatt,* 166 Conn. 43, 51, 347 A.2d 89 (1974); *Hall* v. *Planning Commission,* 181 Conn. 442, 444, 435 A.2d 975 (1980). The determination of aggrievement is a question of fact for the trial court, and the plaintiff has the burden of proving that fact." *Olsen* v. *Inland Wetlands Commission,* 6 Conn. App. 715, 718, 507 A.2d 495 (1986).

The test for whether a party has standing to challenge the actions of his town is well settled. "[O]ur cases in this area have required two conditions . . . to challenge municipal conduct: (1) the plaintiff must be a taxpayer of the defendant municipal entity; and (2) the plaintiff must allege and demonstrate that the allegedly improper municipal conduct causes him to suffer 'some pecuniary or other great injury.' *Bassett* v. *Desmond,* [140 Conn. 426, 430, 101 A.2d 294 (1953)]; see *Belford* v. *New Haven,* [170 Conn. 46, 53, 364 A.2d 194 (1975)]; *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 617, 363 A.2d 1038 (1975); *Gannon* v. *Sanders,* [157 Conn. 1, 244 A.2d 397 (1968)]; see 18 McQuillin, Municipal Corporations (3d Ed.) §§ 52.12, 52.24." *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179

Conn. 541, 549, 427 A.2d 822 (1980). The first condition ensures a legal relationship between the plaintiff and the municipality. The second condition ensures that the decision of the court is capable of providing specific relief to the litigant, not merely generalized relief.

Here, the plaintiff alleged specific facts sufficient to meet the first condition. The facts alleged in the complaint, however, fail to meet the second condition which requires that the plaintiff suffer some particularized injury.

Injury sufficient to meet the second condition may be met by alleging facts that demonstrate that the plaintiff will incur an increased tax burden as a result of the town's actions. *Bassett* v. *Desmond,* supra. Here, the plaintiff is unable to allege such facts as the monies in the fund are provided by the state legislature, not from local tax revenue. Thus, any claim regarding a potential tax increase is identical to similar claims that each and every taxpayer in the state is capable of raising.

Similarly, the plaintiff's claim that he was injured by the decision of the town to expend funds on Birch Mountain Road, rather than the unimproved road abutting his property, is merely a generalized challenge to the discretionary function of local government. This court will not disturb a discretionary action of local government absent a showing of fraud or a gross abuse of discretion. *McAdam* v. *Sheldon,* 153 Conn. 278, 281, 216 A.2d 193 (1965); 18 E. McQuillin, supra, § 52.21. In this case, the plaintiff alleged no facts upon which the trial court could reasonably have concluded that the town's actions were fraudulent or a gross abuse of discretion.

The plaintiff next claims that he had standing to challenge the town's actions because the allocation of monies from the fund was illegal. The only Connecti-

cut authority cited for this proposition is *Nevers* v. *Anderson,* 40 Conn. Sup. 539 (1984), aff'd, 201 Conn. 377, 517 A.2d 620 (1986).

In *Nevers,* the plaintiff met both conditions of the test for standing articulated in *Bassett* v. *Desmond,* supra. First, the plaintiff was a taxpayer of the town of New Britain; second, the pay increase the aldermen had voted for themselves, in contravention of the town charter, would have been funded by local tax revenue, thus, presenting the possibility of increased taxes for the plaintiff.

As we have already pointed out, the plaintiff in this case cannot meet the second condition for standing as the monies which comprise the town's unimproved road fund are allocated from state revenue, not local revenue.

The plaintiff's assertion that *Nevers* stands for the proposition that a taxpayer has standing when his municipal entity engages in illegal conduct incorrectly represents the holding of that case. In *Nevers,* the Supreme Court did not reach this question nor will we reach it today. In the ninth paragraph of its complaint, the plaintiff alleged that the town council violated the "Town Charter of the Town of Glastonbury." Yet there is no reference to specific provisions in the town's charter which the actions of the town council are alleged to have violated, nor does the plaintiff explain in its appellate brief how the actions of the town violated the charter. Similarly, the plaintiff's allegation in paragraph eleven of its complaint, which alleges "collusion and/or bad faith," is unsupported by any facts upon which the trial court could have found illegal conduct. Thus, even if under some circumstances illegality coupled with taxpayer status could be an independent basis for taxpayer standing to sue, this plaintiff has failed to

allege the threshold facts of illegality in its complaint to obtain that status.

The plaintiff's final claim is that it has standing to sue under article first, § 1 of the Connecticut constitution. In particular the plaintiff claims that the allocation of funds for Birch Mountain Road deprived him of constitutionally protected privileges because the town had not allocated any funds for the improvement of the unimproved road abutting his property. "When the thrust of the challenge is that the act violates article first, § 1, of the state constitution, the plaintiffs have demonstrated such invalidity if they can show beyond a reasonable doubt that the legislation 'directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby.' *Warner* v. *Gabb,* 139 Conn. 310, 313, 93 A.2d 487 [1952]; *Carilli* v. *Pension Commission,* 154 Conn. 1, 6–7, 220 A.2d 439 [1966]." *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 115, 355 A.2d 72 (1974). Although the plaintiff alleged, in its complaint, that Fish would benefit from improvements to Birch Mountain Road the plaintiff did not allege facts upon which the court could have concluded that the public would be denied these same benefits.

We conclude, therefore, that the plaintiff's complaint failed to allege a deprivation of constitutionally protected privileges or any specific injury sufficient to confer standing to challenge the town's actions.

There is no error.

In this opinion DUPONT, C. J., concurred.

BIELUCH, J., dissenting. In companion motions, the two defendants moved to strike the plaintiff's amended complaint for lack of standing to bring suit. These the trial court granted, finding, without further articula-

tion, that the "plaintiff does not allege facts requisite to give it standing to sue." In my view, the allegations of the plaintiff's amended complaint are sufficient to establish its standing to bring this suit. For that reason, I disagree with the majority's conclusion to the contrary.

"A motion to strike challenges the legal sufficiency of a pleading. Practice Book § 152; *Blake* v. *Levy,* 191 Conn. 257, 258 n.1, 464 A.2d 52 (1983); *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 530 n.2, 461 A.2d 1369 (1983). It replaced the demurrer in our practice. Practice Book § 151. Like the demurrer, it admits all *facts* well pleaded; it does not admit *legal conclusions or the truth or accuracy of opinions* stated in the pleadings. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 545, 427 A.2d 822 (1980); *McAdam* v. *Sheldon,* 153 Conn. 278, 282, 216 A.2d 193 (1965). The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* supra." (Emphasis in original.) *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 108–109, 491 A.2d 368 (1985). In ruling upon a motion to strike, the trial court is limited to the facts alleged in the complaint. *King* v. *Board of Education,* 195 Conn. 90, 93, 486 A.2d 1111 (1985); *Rowe* v. *Godou,* 12 Conn. App. 538, 544–45, 532 A.2d 978 (1987).

Our courts have long recognized the capacity of taxpayers of towns and cities to challenge the legality of the actions of their municipal officers by seeking injunctive relief against such action. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* supra, 548. "[O]ur cases in this area have required two conditions for the maintenance of actions seeking to challenge municipal

conduct: (1) the plaintiff must be a taxpayer of the defendant municipal entity; and (2) the plaintiff must allege and demonstrate that the allegedly improper municipal conduct causes him to suffer 'some pecuniary or other great injury.' " Id., 549. Under the second condition, the plaintiff must show that he has a specific legal interest, as distinguished from a mere general interest, in the subject matter of the controversy. Id. The allegations of the plaintiff's amended complaint fulfill these requirements. Since the taxpayer status of the plaintiff is not in question, the sole issue before us is whether the plaintiff has adequately alleged that it has been harmed by the stated improper action of the defendant town.

The pertinent allegations of the plaintiff's amended complaint are as follows: The defendant town maintains a fund comprised of state funds allocable to the improvement of unimproved roads.[1] The balance of said fund is approximately $107,000 and no disbursements have been made from this fund for approximately ten

---

[1] The plaintiff's allegation that these funds are applicable *only* to the improvement of unimproved roads is incorrect. General Statutes § 13a-175d provides that "if approved by the commissioner [of transportation] and the selectmen in such town, any portion of said sum distributed to such town in excess of the amount used for the purposes as provided in this section may be used for the purposes of the allocation provided under section 13a-175a."

General Statutes § 13a-175a provides: "For each fiscal year there shall be allocated fourteen million six hundred thousand dollars out of the funds appropriated to the department of transportation, or from any other source, not otherwise prohibited by law, to be used by the towns for construction, reconstruction, improvement or maintenance of highways, sections of highways, bridges or structures incidental to highways and bridges or the improvement thereof, including the plowing of snow, the sanding of icy pavements, the trimming and removal of trees, the installation, replacement and maintenance of traffic signs, signals and markings, and for traffic control and vehicular safety programs, traffic and parking planning and administration, and other purposes and programs related to highways, traffic and parking, and for the purposes of providing and operating essential public transportation services and related facilities."

years. On or about September 24, 1985, the defendant Donald W. Fish requested that approximately $90,000 of these funds be paid to him for the improvement of Birch Mountain Road adjacent to his property. The plaintiff, on or about September 27, 1985, requested that the town "allocate said funds to all unimproved roads located in the Town of Glastonbury, including Dayton Road, an unimproved road in the vicinity of and running through plaintiff's property."

Although the local board of finance opposed Fish's request, on October 8, 1985, the town authorized disbursement of $86,000 in connection with his proposed development. This was the maximum amount which could be disbursed without approval of the board of finance, and left a balance of approximately $21,000 in the unimproved roads fund.

The plaintiff alleged that this action and procedure violated the town charter, was an abuse of the public trust in the funds, and was tainted by collusion and bad faith. The plaintiff claimed aggrievement in that (1) the town unlawfully used public funds for a private benefit to the exclusion of it and other residents and taxpayers, and (2) in denying the plaintiff's request to allocate the funds to all unimproved roads, including Dayton Road which runs through its property, and in nearly exhausting these funds accumulated over approximately ten years, the town had deprived the plaintiff of potential benefits to be derived from the use of public funds for such road improvements in the vicinity of its property.

" 'A highway [or public road] is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all the acts necessary to keep it in repair.' *Peck* v. *Smith,* 1 Conn. 103, 132 [1814]; *Newton* v. *New York, N.H. & H.R. Co.,* 72

Conn. 420, 426, 44 A. 813 [1899]." *Antenucci* v. *Hart-ford Roman Catholic Diocesan Corporation,* 142 Conn. 349, 355–56, 114 A.2d 216 (1955). The construction, improvement, maintenance and repair of roadways is a public duty imposed by charter or legislation upon the towns of our state. To ease the financial and local tax burden upon the municipalities, our legislature has enacted a town aid program for financing local roads. General Statutes §§ 13a-175a through 13a-175j. Section 13a-175a allocates a fund of $14,600,000 each fiscal year to be used by the various towns for the construction, improvement, maintenance and repair of highways and bridges, and for related purposes and programs. The formula for distribution of these funds is provided in § 13a-175b. An additional $4,600,000 is distributed annually to the towns for these purposes under a different formula set forth in § 13a-175i.

A special fund for the improvement of dirt and unimproved roads in the amount of $1,000,000 is allocated annually for distribution to the towns pro rata on the basis of their total mileage of unimproved highways. General Statutes § 13a-175d. Under the terms of this statute, "if approved by the commissioner [of transportation] and the selectmen in such town, any portion of said sum distributed to such town in excess of the amount used for the purposes as provided in this section may be used for the purposes of the allocation provided under section 13a-175a" for the construction, improvement, maintenance and repair of highways and bridges, and related purposes and programs.

These state assistance programs were enacted to aid the towns in financing their road programs. Allocations to the towns under their provisions supplement local budgets from tax revenues for road expenditures. Whatever the state does not provide for the improvement of unimproved roads, the town must furnish through the levy of local taxes. These state payments,

therefore, bear a direct relationship to town taxes assessed against local property owners, including the plaintiff. Consequently, the plaintiff has a specific, legal and financial interest in the proper public disbursement by the local government of state funds for the improvement of unimproved roads.

The funds received by the defendant town from the state under the provisions of § 13a-175d were not a gift to be distributed by the town at its unauthorized discretion. Upon their receipt by the town treasurer, they became public funds for the benefit of the town and its taxpayers and residents. The disbursement of these funds by the town is a public trust imposed by the legislature. Any breach of that trust, as alleged by the plaintiff, is subject to review by the court. The taxpayers who own property bordering on dirt and unimproved roads have a right to a legal, responsible and accountable use of these funds. The alleged unlawful exclusion of these taxpayers from the town's program for the improvement of dirt and unimproved roads is reviewable in the plaintiff's action. The plaintiff has properly alleged "pecuniary or other great injury" by the defendant town's "gross abuse of discretion, an abuse of power, and an abuse of the public trust, tainted by collusion or bad faith."

Accordingly, I would find error.