### ANTHONY J. NANIA ET AL. *v.* FRANCISCO L. BORGES ET AL.

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE No. CV 88
HARTFORD-NEW BRITAIN AT NEW BRITAIN    0430983S

Memorandum filed June 9, 1988

*Moller, Horton & Fineberg,* for the plaintiffs.

*Joseph I. Lieberman,* attorney general, and *Shelagh P. McClure* and *William Prensky,* assistant attorneys general, for the defendants.

SPADA, J. This is an action for a writ of mandamus. The complaint raises two issues: (1) whether the plaintiffs have standing to prosecute this claim, and (2) whether the state treasurer is subject to a mandamus writ under General Statutes § 4-30a.

A hearing was held on May 25, 1988, at which time the parties agreed, with the court's approval, to try the

plaintiffs' motions for a temporary and permanent mandamus in a consolidated fashion.[1] At this hearing both sides presented argument on the defendants' motion to dismiss, which was based on lack of standing and mootness. In their request for a writ of mandamus, the plaintiffs petition the court to issue an order directing the named defendant, Francisco L. Borges, as treasurer of the state of Connecticut, to expend a sum exceeding $63,000,000 in accordance with General Statutes § 4-30a. The plaintiffs also request an order similarly directing the defendant J. Edward Caldwell, as comptroller of the state of Connecticut, to register all warrants and orders for the disbursement and expenditure of that sum in accordance with General Statutes § 4-30a.

The statute at issue reads in toto, as follows: "[General Statutes] Sec. 4-30a. Transfer of unappropriated surplus in general fund to budget reserve fund. Outstanding indebtedness of the state. (a) After the accounts for the general fund have been closed for each fiscal year and the comptroller has determined the amount of unappropriated surplus in said fund, after any amounts required by provision of law to be transferred for other purposes have been deducted, the amount of such surplus shall be transferred by the state treasurer to a special fund to be known as the budget reserve fund. When the amount in said fund equals five per cent of the net general fund appropriations for the fiscal year in progress, no further transfers shall be made by the treasurer to said fund and the amount of such surplus in excess of that transferred to said fund shall be deemed to be appropriated for: (1) Redeeming prior to maturity any outstanding indebtedness of the state selected by the treasurer in the best interests of the state; (2) purchasing out-

---

[1] Therefore, for purposes of appeal this shall be considered a final decision on the complaint for a writ of mandamus.

standing indebtedness of the state in the open market at such prices and on such terms and conditions as the treasurer shall determine to be in the best interests of the state for the purpose of extinguishing or defeasing such debt; (3) providing for the defeasance of any outstanding indebtedness of the state selected by the treasurer in the best interests of the state by irrevocably placing with an escrow agent in trust an amount to be used solely for, and sufficient to satisfy, scheduled payments of both interest and principal on such indebtedness; or (4) any combination of these methods. Pending the use or application of such amount for the payment of interest and principal, such amount may be invested in (A) direct obligations of the United States government, including state and local government treasury securities that the United States Treasury issues specifically to provide state and local governments with required cash flows at yields that do not exceed Internal Revenue Service arbitrage limits, (B) obligations guaranteed by the United States government, and (C) securities backed by United States government obligations as collateral and for which interest and principal payments on the collateral generally flow immediately through to the security holder.

"(b) Moneys in said budget reserve fund shall be expended only as provided in this subsection. When in any fiscal year the comptroller has determined the amount of a deficit applicable with respect to the immediately preceding fiscal year, to the extent necessary, the amount of funds credited to said budget reserve fund shall be deemed to be appropriated for purposes of funding such deficit.

"(c) The treasurer is authorized to invest all or any part of said fund in accordance with the provisions of section 3-31a. The interest derived from the investment of said fund shall be credited to the general fund."

The plaintiffs contend that under this statute the amount in excess of the prescribed budget reserve fund, $63,026,530, must be spent in accordance with § 4-30a (a) (1) through (4), prior to the expiration of the June 30, 1988 fiscal year. The plaintiffs brought this action in their capacity as "citizens and taxpayers of the State of Connecticut." They further allege that they "are duly elected and serving members of the General Assembly of the State of Connecticut," and that they have "suffered and will continue to suffer irreparable harm in that the Defendants have completely disregarded and failed to perform a public duty mandated by law, thereby depriving the plaintiffs and others similarly situated of the benefits of said mandated use of [the amount in excess of the prescribed budget reserve fund]."

The defendants have moved to dismiss this action for lack of subject matter jurisdiction. The defendants initially argue that the plaintiffs lack standing to bring this suit in any capacity alleged. Second, the defendants assert that the question of whether the court should order the selection and implementation of some form or forms of debt reduction as delineated in § 4-30a has been rendered moot with the passage of Special Acts 1988, No. 88-20 § 13.

The defendants further maintain that mandamus does not lie because there is no clear legal right to the relief requested. This argument is based primarily on the contention that there is no mandatory time period within which the excess funds "deemed to be appropriated" are to be allocated to and expended in the various forms of debt reduction enunciated.

Lack of standing is properly raised in a motion to dismiss because "[s]tanding goes to the court's subject matter jurisdiction." *Reitzer* v. *Board of Trustees of State Colleges,* 2 Conn. App. 196, 201, 477 A.2d 129 (1984); *Housing Authority* v. *Local 1161,* 1 Conn. App.

154, 157, 468 A.2d 1251 (1984); see *Middletown* v. *Hartford Electric Light Co.,* 192 Conn. 591, 595, 473 A.2d 787 (1984). The main question of standing raised in this case, state taxpayer standing, is one of first impression. Although there are many cases on both federal and muncipal or local taxpayer standing, the state taxpayer tier has yet to be decided in Connecticut. While the seminal federal taxpayer standing case, *Flast* v. *Cohen,* 392 U.S. 83, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968), has been given approval in passing by the state Supreme Court; *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 65, 441 A.2d 68 (1981); *Maloney* v. *Pac,* 183 Conn. 313, 322, 439 A.2d 349 (1981); *Berlin* v. *Santaguida,* 181 Conn. 421, 423, 435 A.2d 980 (1980); this court concludes that the less stringent municipal taxpayer standing criteria ought to be applied to the plaintiffs at bar. See *American-Republican, Inc.* v. *Waterbury,* 183 Conn. 523, 441 A.2d 23 (1981).

This standard requires that the plaintiffs allege and prove that the challenged activity or transaction will "probably 'result, directly or indirectly, in an increase in his taxes or would, in some other fashion cause him irreparable injury,' " or " 'great injury,' as our law requires." *American-Republican, Inc.* v. *Waterbury,* supra, 526; *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 550, 427 A.2d 822 (1980). The plaintiffs' complaint contains nothing more than a conclusory allegation of "irreparable harm" and is devoid of any reference to a resulting direct or indirect increase in their taxes. As noted, in this regard it states only: "Defendants have completely disregarded and failed to perform a public duty mandated by law, thereby depriving the plaintiffs and others similarly situated of the benefits of said mandated use of [the amount in excess of the prescribed budget reserve fund]."

Furthermore, even if it could be said that the plaintiffs have properly pleaded their standing as taxpayers, they have failed to prove it. At the hearing the plaintiffs called both the state treasurer's and the state comptroller's representatives. Testimony was elicited from each regarding the use or nonuse of the funds at issue in accordance with § 4-30a. The plaintiffs point to a portion of this testimony and argue that because the defendants admittedly refrained and would continue to refrain from retiring certain available bond coupons at a value of 9 percent or more, the state would lose millions of dollars in future years. Although it is true that there need be only "[a] colorable claim of pecuniary loss, regardless of its magnitude" to satisfy standing requirements; *American-Republican, Inc.* v. *Waterbury,* supra, 527; such a loss may not be based on argument, conjecture or hypothesis. At trial, no evidence was presented demonstrating the purported savings. Also, there was no evidence to establish that, if such savings had been obtained by the state, they would have resulted in a direct or indirect savings in the amount of the plaintiffs' taxes.[2]

Bald assertions of citizen and legislator standing are similarly of no avail to the plaintiffs. "Standing is that doctrine which affords a party the right to request an adjudication of issues which affect him and his right *in particular."* (Emphasis added.) *Kaplan* v. *Ellis,*

---

[2] The plaintiffs' argument turns *American-Republican, Inc.* v. *Waterbury,* 183 Conn. 523, 441 A.2d 25 (1981), on its head by contending that the defendants' inactivity will result in the loss of a tax decrease rather than the increase in tax payments that the *American-Republican, Inc.* standard requires. There is also a question as to whether the defendants' inaction would constitute the "transaction" or "activity" required in *American-Republican, Inc.,* and *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 427 A.2d 822 (1980). It is also noteworthy that the testimony presented by the plaintiffs established that payment of state bonds from the excess of the budget reserve fund would more likely than not cause the state to lose in excess of $10,000,000.

1 Conn. App. 368, 370, 472 A.2d 28 (1984), citing *Shaskan* v. *Waltham Industries Corporation,* 168 Conn. 43, 49, 357 A.2d 472 (1975). The plaintiffs' ostensible claim to citizen standing fails because it is too generalized. There is no allegation or evidence showing the individualized or particular nature of the harm to the plaintiffs from the alleged wrong. As stated in *Maloney* v. *Pac,* supra, there is no "logical nexus between the injury and the claim sought to be adjudicated." Id., 322, citing *Flast* v. *Cohen,* 392 U.S. 83, 102, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968). The plaintiffs' claim for relief based on their status as state citizens is too attenuated in that it fails to differentiate their injury from that of any other state resident. More specifically, in this capacity, these plaintiffs are not "person[s] entitled to set the machinery of the courts in operation . . . ." *American-Republican, Inc.* v. *Waterbury,* supra, 526; see *Schlesinger* v. *Reservists Committee To Stop The War,* 418 U.S. 208, 216–27, 94 S. Ct. 2925, 41 L. Ed. 2d 706 (1974) (admonishing "generalized grievances").

The plaintiffs also have failed to make the proper allegations or predicate to establish standing in their capacity as legislators of this state. While the court has found no state court cases addressing legislator standing, the reasoning of the federal courts is cogent on this point. It is generally held that, in the absence of statutory directive, a legislator may sue only to challenge misconduct or illegality in the legislative process itself. See e.g., *Coleman* v. *Miller,* 307 U.S. 433, 59 S. Ct. 972, 83 L. Ed. 1385 (1939) (allowing legislators who, by virtue of tie-breaking vote cast by lieutenant governor, were on losing side, to challenge legality of vote); *Kennedy* v. *Sampson,* 511 F.2d 430 (D.C. Cir. 1974) (action for mandamus and declaratory judgment to force publication of law, which plaintiff voted for, that had remained unpublished due to attempted, but legally ineffective pocket veto); but see *Korioth* v. *Briscoe,* 523 F.2d 1271

(5th Cir. 1975) (legislator whose vote was ineffective due to contrary vote of majority of legislators denied standing to challenge implementation of that vote by executive branch); *Holtzman* v. *Schlesinger,* 484 F.2d 1307 (2d Cir. 1973), cert. denied, 416 U.S. 936, 94 S. Ct. 1935, 40 L. Ed. 2d 286 (1974) (same). No such basis for a claim of legislator standing exists in this case since there is no legal dispute regarding the process resulting in the statute at issue.

Confronted with myriad defenses to their right to maintain this action, the plaintiffs suggest that the doctrine of standing is an artifice and that the public's welfare can be protected only by approval of citizens' lawsuits. The statement from *Schlesinger* v. *Reservists Committee To Stop The War,* supra, 227, that "[t]he assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing," is an admittedly unsatisfactory answer. Of utmost importance in this matter, however, is the recognition in *Schlesinger* that "[o]ur system of government leaves many crucial decisions to the political processes." Id.

With this lawsuit the plaintiffs, coincidentally members of the legislature, seek an order from the judicial branch to force action by the executive branch. This alignment alone reeks with separation of powers concerns. See Conn. Const., art. II, and cases decided thereunder. It is this interest in protecting the subtle autonomy of the different spheres of government that is at the heart of the doctrine of standing.

Despite the Connecticut constitution's lack of a "case or controversy" requirement as enunciated in article three of the United States constitution, Connecticut courts have attributed state standing principles to this concept. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* supra, 546; see also, *Manchester Environ-*

*mental Coalition* v. *Stockton,* supra, 65 (recognizing that standing is a rule of judicial administration). Standing rules are set to protect the integrity not only of the judicial branch, but also of the system of government as a whole. The importance of the justiciability limitations on what cases and parties the courts should entertain is seen in playing out the judicial resolution of this intragovernmental dispute. To grant the relief requested could place the judiciary in the antagonistically anomalous posture of employing the executive to enforce judicially mandated writs against the executive. It is because of these real concerns for political balance that the courts, both federal and state, have developed the doctrine of standing. Accordingly, the plaintiffs' alleged harm is not irreparable; relief is available through the political process.

An additional justiciability constraint is raised by the defendants' argument that this action has been made moot with the passage of Special Acts 1988, No. 88-20, § 13. This argument of mootness is not ripe because General Statutes § 4-30a is still in effect, whereas Special Acts 1988, No. 88-20 does not become effective until July 1, 1988. In light of the fact that the effective date of Special Acts 1988, No. 88-20 is set in the future, there can be, as of yet, no " 'live "Case or Controversy" ' " based on it. *Duke Power Co.* v. *Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 82, 98 S. Ct. 2620, 57 L. Ed. 2d 545 (1978). Accordingly, because an action may be brought on the basis of § 4-30a, the defendants' claim of mootness is premature.

Finally, even if the plaintiffs had standing, their action for a writ of mandamus fails on the merits. " 'It is well established that mandamus will issue only if the plaintiff can establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty; and (3) that the

plaintiff has no adequate remedy at law.' " (Citations omitted.) *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 196, 479 A.2d 808 (1984). It has also been held that "[m]andamus is an extraordinary remedy, designed to enforce a *plain, positive* duty . . . upon the request of one who has a complete and *immediate* legal right." (Emphasis added.) *Simons* v. *Canty,* 195 Conn. 524, 533, 488 A.2d 1267 (1985); *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.,* 188 Conn. 531, 533–34, 450 A.2d 369 (1982).

Even if this court puts aside the question of whether the plaintiffs' lack of standing affects the clarity of the legal right alleged, the plaintiffs' cause fails on other grounds. The plaintiffs argue that the "deemed to be appropriate" language in § 4-30a means that the money at issue must be expended during the fiscal year ending June 30, 1988. The plaintiffs' citation to *Chamber of Commerce of Greater Waterbury* v. *Murphy,* 179 Conn. 712, 718–19, 427 A.2d 866 (1980), is entirely appropriate to point out that a mandatory selection may be the subject of a mandamus action, although the choice to be made is discretionary. Here, however, in § 4-30a there is no mandatory language directing that the moneys be expended within any time period. The fact that the statutes say the moneys are "deemed to be appropriated" means only that the defendants are authorized to expend them in the prescribed manner. See *Bridgeport* v. *Agostinelli,* 163 Conn. 537, 547, 316 A.2d 371 (1972) (adopting the definition of "appropriation" in General Statutes § 4-69 [4]).[3] In § 4-30a, the "specific purpose" of the appropriation does not include a time period within which the moneys are to be expended. Therefore, the court has no clear, plain, positive or

[3] General Statutes § 4-69 (4) defines "appropriation" as "an authorization by the general assembly to make expenditures and incur liabilities for specific purposes."

immediate right upon which to base the issuance of a writ of mandamus.

Accordingly, because the plaintiffs lack standing to pursue this action, the defendants' motion to dismiss is hereby granted.