[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
On May 10, 1994, the plaintiffs, Cynthia Enama and Connecticut State Senator George Gunther, filed an application for a temporary injunction, an order to show cause, and a complaint against the defendants, Governor Lowell P. Weicker; Lieutenant Governor Eunice S. Groark; William J. Cibes, secretary to the Office of Policy and Management of the State of Connecticut; Joseph M. Suggs, Treasurer of the State of Connecticut; Nicholas Cioffi, Commissioner of the Connecticut Department of Public Safety; John M. Bailey, Chief State's Attorney; and Richard Blumenthal, Attorney General of the State of Connecticut. On May 20, 1994, the plaintiffs filed an amended complaint. The plaintiffs seek a permanent injunction prohibiting the defendants from transferring any funds from the veterans' property tax relief account to the account for the Division of Criminal Justice, a writ of mandamus requiring the Financial Advisory Committee ("FAC") to rescind the contested transfer, and an order requiring the FAC to respond the FAC to respond quo warranto[1] as to its authority to order the contested transfer.
These actions arise out of the alleged transfer of monies by the Office of Policy and Management ("OPM") from an account for property tax relief for veterans to the account of the Division of Criminal Justice pursuant to General Statutes § 4-87. The parties stipulated that the amount in controversy is $281,065 and that the purpose of the transfer was to fund the shortage incurred by the merchandise for guns program. Further, the parties stipulated that this transfer was made with the consent of the Financial Advisory Committee (FAC) whose members include the governor, the lieutenant governor, the comptroller, the treasurer and five legislators. The plaintiffs allege that this transfer violates the Connecticut constitution articles I and II. The plaintiffs also allege that CT Page 6539 this transfer violates General Statutes §§ 4-87 and 51-279(b). Further, the plaintiffs allege that this transfer will probably, directly or indirectly, cause their federal or state taxes to increase.
On May 20, 1994, the defendants filed a motion to dismiss accompanied by a memorandum of law in support of their motion. The defendants also filed an affidavit from Pamela A. Law, Fiscal and Program Policy Section Director, and two affidavits from Thomas A. Siconolfi, the Director of Justice Planning with the Office of Policy and Management.
On May 27, 1994, the plaintiffs filed a memorandum in opposition to the defendants motion to dismiss. Also, on May 27, 1994, an amended complaint as of right was filed. On June 2, 1994, the plaintiffs filed the affidavit of state Senator George Gunther.
A motion to dismiss is used to contest the court's jurisdiction. Zizka v. Water Pollution Control Authority, 195 Conn. 682,687, 490 A.2d 509 (1985). "A motion to dismiss tests, inter alia, whether on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624, 461 A.2d 991
(1983).
"[Subject matter jurisdiction] is the power of the court to hear and determine cases of the general class to which the proceedings belong." Henry F. Rabb Connecticut, Inc. v. J.W.Fisher Co., 183 Conn. 108, 111-12, 438 A.2d 834 (1981). "[A]s soon as the jurisdiction of the court to decide an issue is called into question, all other action in the case must come to a halt until such a determination is made." Gurliacci v. Mayer, 218 Conn. 531,544-45, 490 A.2d 509 (1991). "[O]nce the question of lack of subject matter jurisdiction is raised `[it] must be disposed of no matter in what form it is presented.'" Castro v. Viero, 207 Conn. 420,429, 541 A.2d 1216 (1988). If the face of the record indicates that the court is without jurisdiction the complaint must be dismissed. Upson v. State, supra.
In the absence of standing, the court lacks subject matter jurisdiction to determine the merits of the case. Tomlinson v.Board of Education, 226 Conn. 704, 717-18, 629 A.2d 333 (1993). Standing is the legal right to set judicial machinery in motion. (Citations omitted). Unisys Corp. v. Department of Labor, 220 Conn. 689,693, 600 A.2d 1019 (1991). Standing is not a technical concept, but rather a practical one designed to ensure the CT Page 6540 adjudication of justiciable interests. Id.
As an initial matter, the plaintiffs' amended complaint is amended as of right pursuant to Practice Book § 175. Therefore, it does not require that any motion "be entertained" by the court and can be filed after a motion to dismiss. See Sheehan v. ZoningCommission, 173 Conn. 408, 412-13, 378 A.2d 519 (1977).
The defendants argue in their memorandum in support of their motion to dismiss that the plaintiffs do not have either federal or state taxpayer standing. The defendants argue that although the Connecticut Constitution lacks a "case or controversy" requirement, the court nevertheless employs federal standards to determine taxpayer standing to sue state actors. Therefore, the defendants argue that like a federal taxpayer, the plaintiffs may challenge a state expenditure only on the grounds that it constitutes an unconstitutional exercise of the legislature's taxing and spending power. Further, the defendants argue that although the plaintiffs' alleged probable increase in tax may meet a "municipal taxpayer nexus standard," a more definite showing of a tax increase is required for state taxpayers. The defendants argue further that even if the plaintiffs need only allege a probability, the plaintiffs have neither alleged how the transfer might cause an increase, nor how the plaintiffs would be irreparably injured.
The defendants argue that plaintiff Gunther does not have "legislative standing." The defendants argue that in the absence of a statutory directive, a legislator may sue only to challenge misconduct or illegality in the legislative process itself. The defendants argue that plaintiff Gunther has alleged only that the action taken by the FAC is contrary to the rules and purposes of the Connecticut General Assembly.
The defendants have not addressed the plaintiffs' allegation that "the transfer of funds violates the Connecticut Constitution Article 1, section 1, which provisions prohibit the conferring of a public emolument on private individuals." However, the defendants argue that if the court adopts the federal test for state taxpayer standing the plaintiffs must challenge the legislature's authority to tax and spend under Article II of Connecticut Constitution. The defendants argue that the plaintiffs only challenge an "incidental expenditure of tax funds in the administration of an essentially regulatory statute."
The plaintiffs argue in their memorandum in opposition that CT Page 6541 the requirement of justiciability is met when the complaint makes a colorable claim of direct injury that he has suffered or is likely to suffer in an individual or representative capacity. The plaintiffs also argue that Senator Gunther has standing because the action taken by the Financial Advisory Committee usurped a legislative function which gives him standing to "enforce legislative authority and responsibility."
The case of Flast v. Cohen, 392 U.S. 83, 88 S. Ct[.] 1942,20 L.Ed. 947 (1968); determined the test for federal taxpayer standing.
 [A] taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I § 8 of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by A. I, § 8.
Flast v. Cohen, Id. The plaintiffs have not alleged federal taxpayer status, only that their federal taxes will increase. Based on the federal requirements, and the absence of any allegations of federal taxpayer status, the plaintiffs have no federal taxpayer standing.
The Connecticut Constitution does not have a "case or controversy" requirement as does the United States Constitution. Nevertheless, the Connecticut courts have adopted the federal requirements to determine state standing. See Connecticut Business Industry Assn., Inc. v. CHHC, 218 Conn. 335, 346-47, 589 A.2d 356
(1991); University of Connecticut Chapter AAUP v. Governor,200 Conn. 386, 389, 512 A.2d 152 (1986); Connecticut Assn. of HealthCare Facilities, Inc. v. Worrell, 199 Conn. 609, 612-13,508 A.2d 743 (1986). CT Page 6542
 The plaintiff's status as a taxpayer does not automatically give her standing to challenge alleged improprieties in the conduct of the defendant. . . . The plaintiff must also allege and demonstrate that the allegedly improper . . . conduct caused her to suffer some pecuniary or other great injury.
Sadloski v. Manchester, 228 Conn. 79, 83, 634 A.2d 888 (1993). "The plaintiff must show `a logical nexus between the status [injury] asserted and the claim sought to be adjudicated.'" Kellyv. Dearington, 23 Conn. App. 657, 663, 583 A.2d 937 (1990), quotingFlast v. Cohen, supra, 392 U.S. 83. A plaintiff claiming taxpayer status must prove that the alleged conduct has directly or indirectly increased her taxes. See Sadloski v. Manchester, supra, 83.
"[A] party who was simply a member of the general public who has not demonstrated how she was harmed in a unique fashion by the conduct she had challenged in declaratory judgment action had failed to establish a colorable claim of direct injury and accordingly lacked standing to maintain the action." ConnecticutBusiness Industry Assn., Inc. v. CHHC, supra, 218 Conn. 348. Similarly, in the case of an injunction, a threshold to obtaining taxpayer standing, the taxpayer must allege facts to support her allegations of illegal or improper conduct. See Double I LimitedPartnership v. Glastonbury, 14 Conn. App. 77, 82, 540 A.2d 81
(1988).
"The test for whether a party has standing to challenge the actions of his town is well settled." Id., 80. "[T]he plaintiff must be a taxpayer of the municipal entity and . . . the plaintiff must allege and demonstrate that the allegedly improper conduct causes him to suffer `some pecuniary or other great injury." Id. "Although there are many [Connecticut cases on both federal and municipal or local taxpayer standing the state taxpayer tier has yet to be decided in Connecticut." Nania v. Borges, 41 Conn. Sup. 90,94, 551 A.2d 781 (1988, Spada, J.) (applied municipal taxpayer standard to a state taxpayer's action for mandamus to compel the defendant to expend certain sums in the state budget reserve to reduce stated debt). In Nania, however, the plaintiffs' complaint was "devoid of any references to a resulting direct or indirect increase in their taxes." Id. The court continued its analysis by stating that even if the action was properly pleaded the claim would fail "because it was too generalized" and "their status as CT Page 6543 state citizens is too attenuated in that it fails to differentiate their injury form that of any other state resident." Id. The Nania
court's use of a municipal taxpayer standard did not actually impact the outcome of that case because the complaint was devoid of any allegations of injury. The use of either a municipal standard, which requires the plaintiff to plead a probable direct or indirect increase in taxes, or an adaptation of a federal standard, which would require the plaintiff to show that a threatened action would directly result in an increase in taxes; see Unisys Corporation v.Department of Labor, 220 Conn. 689, 695, 600 A.2d 1019 (1991); is immaterial as both standards require a threshold showing of a "colorable claim of injury."
"The question of standing does not involve an inquiry into the merits of the case." State v. Pierson, 208 Conn. 683, 687,546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S.Ct. 1131,103 L.Ed.2d 193 (1989). "It merely requires the party to make allegations of a colorable claim of injury to an interest which is arguably protected or regulated by the statute or constitutional guarantee in question." Id.
"[W]here affidavits contesting facts in the complaint are provided, the trial court need not conclusively presume the validity of the allegations of the complaint. . . ." Amore v. Frankel,228 Conn. 358, 365, ___ A.2d ___ (1994).
Three affidavits were filed by the defendant. Pamela A. Law states the following her affidavit: in 1993 the state legislature adopted a biennial budget for 1993-94 and 1994-95; neither year is affected by the transfer in question; an individual's tax burden would not be increased nor decreased by the transfer. Thomas Siconolfi states in his affidavits the following: that the transfer was an intra-agency transfer between OPM accounts; the transfer was made from a surplus in the Property Tax Relief for Veterans Account; OPM subsequently awarded a grant to the Office of the Chief State's Attorney for the purchase of the gift certificates in exchange for guns; such intra-agency transfers occur in the regular course of business; no veteran has been or will be deprived of property tax relief as a result of the transfer.
The plaintiffs allege violations of Articles I and II of the Connecticut Constitution. The plaintiffs allege that "the transfer of funds violates the Connecticut Constitution Article 1, section1, which provisions prohibit the conferring of a public emolument on private individuals." CT Page 6544
 [W]hen the thrust of the challenge is that the act [of the defendant] violates article first, [§] 1, of the state constitution, the plaintiffs have demonstrated such invalidity if they can show beyond a reasonable doubt that the legislation directs the granting of an emolument or privilege to individual or class without any purpose expressed or apparent, to serve the public welfare thereby.
Double I Limited Partnership v. Glastonbury, supra, 83. The affidavits indicate that the "guns for goods" program is a program designed to serve public welfare. The plaintiffs have not alleged facts to support a colorable claim of injury under Article I of the Connecticut constitution. Accordingly, the plaintiffs cannot obtain standing on that ground.
The plaintiffs filed an affidavit from Senator Gunther which detailed the history of the transfer. The affidavit states that the initial request for an appropriation for the "guns for goods" program was not approved by the legislature. The affidavit states further that the FAC thwarted the will of the legislature by providing the funds. The plaintiffs allege that this action by the governor and the FAC is a violation of Article II, because the transfer violated the separation of powers. The parties stipulated that the transfer of funds was made pursuant to General Statutes § 4-87, which states in part:
 Whenever any specific appropriation of a budgeted agency proves insufficient to pay expenditures required for the statutory purposes for which such appropriation was made, the governor may, at the request of the budgeted agency, transfer from any other specific appropriation of such budgeted agency such amount as the governor deems necessary to meet such expenditures. . . . No transfer to or from any specific appropriation of a sum or sums over fifty thousand dollars or ten per cent [sic] of any such specific appropriation, whichever is less, shall be made under this section in any one fiscal year without the consent of the finance advisory committee. . . . Notification of all transfers made shall be sent to the joint standing committee of the general assembly having cognizance of matters CT Page 6545 relating to appropriations and the budgets of state agencies, through the office of fiscal analysis.
General Statutes § 4-87. The definition of a "budgeted agency is found in General Statutes § 4-69(11), and it provides in relevant part:
 "Budgeted agency" means (a) every department, board, council, commission, institution or other agency of the executive department of the state government, provided each board, council, commission, institution or other agency included by law within any given department shall be deemed a division of that department . . . (c) every full-time permanent department or agency of the legislative branch of the state government; and (d) every public and private institution organization, association or other agency receiving financial aid from the state. . . .
General Statutes § 4-69(11).
The plaintiffs have not alleged that the OPM is not a budgeted agency within the meaning of § 4-87. Furthermore, the plaintiffs have neither alleged how this transfer violates § 4-87, nor that this statute is unconstitutional. Moreover, the defendants' affidavits state that this transfer was an intra-agency transfer contemplated by the statute. Also, the defendants' affidavits state that these types of transfers are part of the daily workings of the state government. The plaintiffs have attached a copy of the adjustment request form from the Office of Policy and Management ("OPM") to their complaint. The form indicates that the appropriation was made by the agency of the OPM to OPM account 603, entitled "Justice Assistance Grants — Payments to Other than Local Governments," from another OPM account entitled Property Tax relief for Veterans. (Plaintiffs' Exhibit A).
The plaintiffs' own exhibit does not support their alleged violation that this was a transfer between agencies, but rather tends to disprove it. The plaintiffs' allegation cannot support a colorable claim of injury based on Article II of the Connecticut Constitution or on a violation of General Statutes § 4-87. Accordingly, the plaintiffs cannot maintain standing on these grounds. CT Page 6546
Finally, the plaintiffs allege that this transfer violates General Statutes § 51-279(b). Section 51-279(b) provides in relevant part "[n]otwithstanding the provisions of section 4-87, or any other statute, no moneys appropriated for the maintenance and operation of the division may be transferred for use for any other purpose of the division of criminal justice." The plaintiffs have not alleged that the money transferred was "appropriated for the maintenance and operation" of the Criminal Justice Division. The form submitted by the plaintiffs does not indicate that the appropriation was made for the maintenance of the Criminal Justice Division. In fact, the form indicates that the transfer was made for "Justice Assistance Grants — Payments to Other than Local Governments." Additionally, the form indicates the purpose of the transfer was to obtain federal matching funds. The affidavits submitted by the defendants support the information contained in the form. The plaintiffs have not alleged facts to support a colorable claim of injury under General Statutes § 51-279(b). Accordingly, they cannot maintain standing on that ground.
The plaintiffs rely on Nania v. Borges, supra, 41 Conn. Sup. 90
supra; to support Senator Gunther's legislator standing. The court in Nania held that "generally . . . in the absence of statutory directive, a legislator may sue only to challenge misconduct or illegality in the legislative process itself." Id., 96. As discussed above the facts do not support any illegal action taken by the legislature or even improper action. Accordingly, Senator Gunther does not have standing by virtue of his status as a member of the General Assembly.
Because the plaintiffs have not shown a colorable claim of injury, Ms. Enama, cannot meet the threshold requirement of taxpayer standing using either a municipal or federal standard. Further, Senator Gunther cannot achieve legislative standing based on the allegations of his complaint.
Nevertheless, even if the court were to find that the plaintiffs have shown a colorable claim of injury, the plaintiffs have not alleged any facts to show a nexus between their alleged injury and the action taken by the defendants. Both a municipal standard and a federal standard requires a showing of a nexus. Further, the harm of a probable increase in taxes alleged by Ms. Enama "may not be based on argument, conjecture or hypothesis." Id., 95. The defendants have submitted affidavits which show that this transfer will not have any impact on Ms. Enama's taxes CT Page 6547 whatsoever. Because she has not alleged any facts to show a nexus between the alleged injury and the alleged illegal or improper conduct, Ms. Enama could not maintain standing even if she could show a colorable claim of injury.
The plaintiff Ms. Enama does not have taxpayer standing and Senator Gunther does not have legislative standing to maintain this action against the defendants. Accordingly, because neither of the plaintiffs have standing, the defendants' motion to dismiss is granted on the ground of lack of subject matter jurisdiction.
Philip E. Mancini, Jr. State Trial Referee